[965 NE2d 928, 942 NYS2d 426]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HOWARD K. SMITH, Appellant.

Argued January 11, 2012; decided February 16, 2012

## POINTS OF COUNSEL

*Larkin, Axelrod, Ingrassia & Tetenbaum, LLP*, Newburgh (*Kathleen V. Wells* of counsel), for appellant. Howard K. Smith's mere innocent failure to submit to a breath test because he believed he could wait to consult with his attorney first was not a refusal and should not have been introduced against him and considered as evidence of consciousness of guilt. (*People v Lynch*, 195 Misc 2d 814; *People v Rosado*, 158 Misc 2d 50; *People v Gursey*, 22 NY2d 224; *People v O'Rama*, 78 NY2d 270; *People v Niedzwiecki*, 127 Misc 2d 919; *People v Davis*, 8 Misc 3d 158; *Matter of White v Melton*, 60 AD2d 1000; *Matter of Sullivan v Melton*, 71 AD2d 797; *People v Basora*, 75 NY2d 992; *People v Thomas*, 46 NY2d 100.)

*Thomas P. Zugibe, District Attorney*, New City (*Itamar J. Yeger* of counsel), for respondent. The lower court properly considered defendant's refusal to take the breathalyzer test as a "persistent refusal." In any event, any error was harmless in light of defendant's other acts constituting consciousness of guilt and the overwhelming evidence that his ability to drive was impaired. (*People v Cruz*, 48 NY2d 419; *People v Gonzalez*, 55 NY2d 720; *People v Giles*, 73 NY2d 666; *People v Abrew*, 95 NY2d 806; *People v Gethers*, 86 NY2d 159; *Najjar Indus. v City of New York*, 68 NY2d 943; *People v O'Neil*, 62 AD3d 727; *People v Hucks*, 175 AD2d 213; *People v O'Rama*, 78 NY2d 270; *People v Cragg*, 71 NY2d 926.)

## OPINION OF THE COURT

GRAFFEO, J.

As a consequence of a motor vehicle stop, defendant was convicted of driving while ability impaired. On appeal, he maintained that the trial court erred in permitting the People to introduce—as proof of consciousness of guilt—evidence that he refused to take a chemical breath test to determine his blood alcohol content when requested to do so by state troopers. We agree and we therefore reverse the conviction and remit for a new trial.

On March 28, 2007, at approximately 3:30 A.M., New York State troopers stopped defendant's vehicle on the Palisades Parkway in Rockland County for a window tinting violation. When the troopers smelled alcohol on defendant's breath, he was asked to exit his vehicle. After he failed field sobriety tests, defendant was arrested for driving while intoxicated (Vehicle and Traffic Law § 1192 [3]). At the scene of the motor vehicle stop, the troopers administered *Miranda* warnings and chemical test warnings as contemplated in Vehicle and Traffic Law § 1194 (2) (f).

The chemical test warnings informed defendant:

> "You are under arrest for driving while intoxicated. I am going to ask you if you will submit to a chemical test to determine the alcohol and/or drug content of your blood. Before I do, I must advise you that a refusal to submit to a chemical test or any portion thereof will result in the immediate suspension and subsequent revocation of your license or operating privileges, whether or not you are found guilty of

the charge for which you were arrested. Your refusal to submit to a chemical test or any portion thereof can be introduced into evidence against you at any trial, proceeding or hearing resulting from this arrest. Do you understand what I have told you? Will you submit to a chemical test for the purpose of determining the alcohol and/or drug content of your blood?"

Defendant stated that he understood the warnings but wanted to speak to his lawyer before deciding whether to take a chemical test.

Defendant was transported to the state police barracks where he was given chemical test warnings a second time and asked if he was willing to consent to a test. Defendant again indicated that he wished to telephone his attorney. Although he was permitted to use the telephone, defendant was unable to reach his lawyer. A half hour later, the troopers read the chemical test warnings a third time and sought an answer from defendant concerning whether he would take a chemical test. Defendant responded that he was waiting for his attorney to call him back. At this juncture, the troopers interpreted defendant's response as a refusal to submit to the test and they recorded that refusal on a form pursuant to Vehicle and Traffic Law § 1194 (2) (b).

At a pretrial hearing in connection with his driving while intoxicated charge, defendant moved to preclude the People from introducing evidence at trial that he refused to take the chemical test. Defendant asserted that he had never actually declined to be tested but merely requested an opportunity to contact his attorney first, which request was initially granted by the troopers. Because he was never advised that his time to seek a consultation with an attorney had elapsed, defendant maintained that he was unaware that his response to the third request—that he was waiting to hear back from his lawyer—would be interpreted as a refusal to take the test. He therefore argued that the People should not be permitted to offer evidence that he declined to take a chemical test in order to establish consciousness of guilt.

Town Court denied defendant's motion to preclude, determining that defendant's conduct amounted to a constructive refusal to take a chemical test and, at the subsequent bench trial, the People elicited evidence to that effect. Defendant was acquitted of driving while intoxicated but

convicted of the lesser included offense of driving while ability impaired. On appeal, defendant challenged the admission of the refusal evidence at trial but the Appellate Term affirmed the conviction, reasoning that Town Court did not err in concluding that the proof was admissible (27 Misc 3d 135[A], 2010 NY Slip Op 50789[U] [2010]). A Judge of this Court granted defendant leave to appeal (15 NY3d 895 [2010]) and we now reverse.

Chemical breath tests to determine blood alcohol content (BAC) are an important investigative tool used by law enforcement in the effort to combat driving while intoxicated and related offenses. The administration of these tests is a time-sensitive proposition; to maximize the probative value of BAC evidence, the police endeavor to administer chemical tests as close in time as possible to the motor vehicle infraction, typically within two hours of an arrest.[1]

The standards governing the administration of chemical tests to ascertain BAC in this circumstance are set forth in Vehicle and Traffic Law § 1194. Although there is no constitutional right to avoid submitting to a chemical test of this nature (see People v Shaw, 72 NY2d 1032 [1988]; People v Thomas, 46 NY2d 100, 108 [1978], appeal dismissed 444 US 891 [1979]), subdivision (2) (b) of that statute grants a motorist a qualified right to decline to voluntarily take a chemical test with the understanding that such a decision will have significant consequences: it will result in the immediate suspension and ultimate revocation of the motorist's driver's license for one year (Vehicle and Traffic Law § 1194 [2] [d]) and will permit the People to elicit evidence of such refusal at any subsequent criminal trial (Vehicle

---

1. Although time is of the essence in obtaining chemical test evidence, if a defendant agrees to take the test, there is no per se statutory bar on admission of the results if the test was administered more than two hours after defendant's arrest (see People v Atkins, 85 NY2d 1007 [1995]). Similarly, there is no time restriction on admission of the results of court-ordered chemical testing under Vehicle and Traffic Law § 1194 (3) or any additional test conducted by a physician at the behest of the motorist pursuant to Vehicle and Traffic Law § 1194 (4) (b) (id. at 1009). However, Vehicle and Traffic Law § 1194 (2) (a), the implied consent provision governing when a motorist "shall be deemed to have given consent to a chemical test," does contain a two-hour limitation (see e.g. People v Hall, 61 NY2d 834 [1984] [where a blood test was performed on an incapacitated motorist within two hours of his arrest following a motor vehicle accident, test results were properly admitted at trial on an implied consent theory]).

and Traffic Law § 1194 [2] [f]).[2] However, those consequences flow from a refusal only if the motorist is first warned, "in clear and unequivocal language, of the effect of such refusal" (id.).

To implement the statute, law enforcement authorities have developed a standardized verbal warning of the consequences of refusal to take the test that is given to a motorist suspected of driving under the influence—the warning that was administered to defendant in this case. The duty to give the warning is triggered if the motorist is asked to take a chemical test and declines to do so. If, after being advised of the effect of such a refusal, the motorist nonetheless withholds consent, the motorist may be subjected to the statutory consequences.

Vehicle and Traffic Law § 1194 does not address whether a motorist has a right to consult with a lawyer prior to determining whether to consent to chemical testing. However, if the motorist is arrested for driving while intoxicated or a related offense, this Court has recognized a limited right to counsel associated with the criminal proceeding. In People v Gursey (22 NY2d 224, 227 [1968]), we held that if a defendant arrested for driving while under the influence of alcohol asks to contact an attorney before responding to a request to take a chemical test, the police "may not, without justification, prevent access between the criminal accused and his lawyer, available in person or by immediate telephone communication, if such access does not interfere unduly with the matter at hand." If such a request is made, and it is feasible for the police to allow defendant to attempt to reach counsel without unduly delaying administration of the chemical test, a defendant should be afforded such an opportunity. As we explained in Gursey, the right to seek the advice of counsel—typically by telephone—could be accommodated in a matter of minutes and in most circumstances would not substantially interfere with the investigative procedure. That being said, we made clear that there is no absolute right to refuse to take the test until an attorney is actually consulted, nor can a defendant use a request for legal consultation to significantly postpone testing. "If the lawyer is not physically present and cannot be reached promptly by telephone or otherwise," a defendant who has asked to consult with an attorney can be required to make a decision without the benefit of

---

2. If the motorist declines to consent, the police may not administer the test unless authorized to do so by court order (see Vehicle and Traffic Law § 1194 [3]).

counsel's advice on the question (*id.* at 229). Where there has been a violation of the limited right to counsel recognized in *Gursey*, any resulting evidence may be suppressed at the subsequent criminal trial (*id.*).

Here, defendant does not argue that his limited right to counsel was violated—nor could he. When defendant expressed a desire to consult with his lawyer, the troopers appropriately permitted him to telephone his attorney, fulfilling the requirements of *Gursey*. Moreover, the troopers even allowed defendant to wait a half hour for a return telephone call before they again approached him and asked whether he was willing to consent to a chemical test.

■ Thus, although this case involves a request to speak to counsel, the issue here is not whether defendant's *Gursey* right was violated but, rather, whether proof that he refused a chemical test was properly admitted against him at trial. Under Vehicle and Traffic Law § 1194 (2) (f), evidence that a defendant declined to take a chemical test is admissible provided that defendant was clearly and unequivocally informed that this would be one of the ramifications of refusal. The proof is received to permit the inference of consciousness of guilt, i.e., "that defendant refused to take the test because of his apprehension as to whether he would pass it" (*Thomas*, 46 NY2d at 106). The admission of this type of evidence does not implicate a defendant's right against self-incrimination because there is no compulsion to refuse to take the test; to the contrary, as was evident here where troopers gave defendant three opportunities to take the test, law enforcement officers would much rather secure accurate evidence of BAC than obtain the right to offer "refusal" evidence at trial (*id.*).

Needless to say, refusal evidence is probative of a defendant's consciousness of guilt only if the defendant actually declined to take the test. And whether a defendant refused in a particular situation may be difficult to ascertain in cases where the accused did not communicate that intent in so many words. To be sure, a defendant need not expressly decline a police officer's request in order to effectuate a refusal that is admissible at trial. A defendant can signal an unwillingness to cooperate that is tantamount to a refusal in any number of ways, including through conduct. For example, where a motorist fails to follow the directions of a police officer prior to or during the test, thereby interfering with the timing of the procedure or its efficacy, this can constitute a constructive refusal. As the People

argue in this case, whether defendant's words or actions amounted to a refusal often constitutes a mixed question of law and fact that requires the court to view defendant's actions in light of all the surrounding circumstances and draw permissible inferences from equivocal words or conduct.

In this case, however, a pure issue of law is presented because there is no dispute concerning the events that led up to the trooper's conclusion that defendant had refused to take the test and we are asked whether, drawing all permissible inferences in the light most favorable to the People, the evidence was sufficient to support the admission of refusal evidence. We conclude that it was not. Not only did the troopers grant defendant's request to attempt to contact his attorney but they left him alone for a significant period of time to await the call back from his lawyer. The troopers did not indicate at any point that BAC tests were to be administered promptly or that defendant's time to make a decision was limited. Hence, when defendant was asked on the third and final occasion whether he was willing to take a chemical test, he had no reason to know that his time for deliberation was over. Defendant responded in much the same way he had on previous occasions—he indicated that he was waiting to make a decision until he could consult with counsel. Since a reasonable motorist in defendant's position would not have understood that, unlike the prior encounters, the further request to speak to an attorney would be interpreted by the troopers as a binding refusal to submit to a chemical test, defendant was not adequately warned that his conduct would constitute a refusal. The evidence of that refusal therefore was received in error at trial.

The People argue that such a finding will, in effect, compel law enforcement authorities to provide defendants with a litany of additional warnings not required by Vehicle and Traffic Law § 1194. In particular, the People suggest that a reversal here will require police officers to advise defendants concerning the contours of their limited right to counsel. But this is not the case. We have already rejected the notion that the police must notify a defendant concerning the limited right recognized in *Gursey* (*Shaw*, 72 NY2d 1032). All that is required for a refusal to be admissible at trial is a record basis to show that, through words or actions, defendant declined to take a chemical test despite having been clearly warned of the consequences of refusal. In this case, such evidence would have been present if, during the third request, troopers had merely alerted defendant that

his time for deliberation had expired and if he did not consent to the chemical test at that juncture his response would be deemed a refusal. Indeed, we already approved the use of a comparable admonition in *People v O'Rama* (78 NY2d 270, 280-281 [1991]) where, after defendant continued to express his desire to consult with counsel before taking a chemical test despite his inability to promptly reach his lawyer, the police properly advised defendant that his insistence on waiting for his attorney would be interpreted as a refusal.

In the alternative, the People maintain that, even if there was error, reversal is not warranted because the error was harmless. We are unpersuaded, particularly since the trial court—which acted as the finder of fact—clearly relied on the consciousness of guilt evidence, indicating in its decision that it was this proof, coupled with defendant's performance on field sobriety tests and the odor of alcohol, that led to the conviction on the driving while ability impaired count. Moreover, in response to a post-trial motion to set aside the verdict, the trial court adhered to its finding of guilt but characterized the proof on the driving while ability impaired charge as presenting "a fairly close question." Under the circumstances, remittal for a new trial is warranted.

Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.

Chief Judge LIPPMAN and Judges CIPARICK, READ, SMITH, PIGOTT and JONES concur.

Order reversed, etc.