People v Enriquez (2020 NY Slip Op 51123(U))

[*1]

People v Enriquez (Konnie)

2020 NY Slip Op 51123(U) [69 Misc 3d 127(A)]

Decided on October 1, 2020

Appellate Term, Second Department

Published by New York State Law Reporting Bureau
pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be
published in the printed Official Reports.

Decided on October 1, 2020
SUPREME COURT, APPELLATE TERM, SECOND
DEPARTMENT, 9th and 10th JUDICIAL DISTRICTS
PRESENT: : THOMAS A. ADAMS, P.J., JERRY GARGUILO, ELIZABETH H.
EMERSON, JJ

2017-1252 S CR

The People of the State of New York,
Respondent, 
against
Konnie K. Enriquez, Appellant. 

Suffolk County Legal Aid Society (Edward E. Smith of counsel), for appellant.
Suffolk County District Attorney (Alfred J. Croce of counsel), for respondent.

Appeal from two judgments of the District Court of Suffolk County, First District (Richard
T. Dunne, J.), rendered May 25, 2017. The judgments convicted defendant, upon jury verdicts, of
driving while ability impaired and resisting arrest, and of speeding, respectively, and imposed
sentences. The appeal brings up for review a January 7, 2015 oral order of that court denying
defendant's motion to suppress evidence.

ORDERED that the judgment convicting defendant of driving while ability impaired and
resisting arrest is affirmed; and it is further,
ORDERED that the judgment convicting defendant of speeding is reversed, on the law, the
accusatory instrument charging that offense is dismissed, and the fine imposed thereon, if paid, is
remitted.
Insofar as relevant to this appeal, defendant was charged, in an information, with driving
while intoxicated (Vehicle and Traffic Law § 1192 [3]) and resisting arrest (Penal Law
§ 205.30), and, in a simplified traffic information, with speeding (Vehicle and Traffic Law
§ 1180 [d]). The District Court, after a hearing, denied defendant's pretrial motion to
suppress evidence of her refusal to submit to a chemical test requested to determine the alcohol
content of defendant's blood. Following a jury trial, defendant was found guilty of resisting
arrest, speeding, and driving while ability impaired (Vehicle and Traffic Law § 1192 [1]) as
a lesser included offense of driving while intoxicated, and was sentenced to three years'
probation, fines and mandatory surcharges.
Turning first to defendant's contention that the District Court erred in denying defendant's
motion to suppress evidence of her refusal to submit to a chemical test, Vehicle and Traffic Law
§ 1194 (2) (a) provides that "[a]ny person who operates a motor vehicle in [New York
State] [*2]shall be deemed to have given consent to a chemical
test of . . . breath, blood, urine, or saliva, for the purpose of determining the alcoholic and/or drug
content of the [motorist's] blood." "Vehicle and Traffic Law § 1194 also grants a motorist a
qualified right to decline to voluntarily take a chemical test with the understanding that such a
refusal will result in the immediate suspension and ultimate revocation of the motorist's driver
license for a period of one year" (People
v Patel, 169 AD3d 935, 936 [2019]; see Vehicle and Traffic Law § 1194
[2] [d]; People v Smith, 18 NY3d
544, 548 [2012]). The statute further provides that, where a motorist refuses to submit to a
chemical test, evidence of such refusal "shall be admissible in any trial, proceeding or hearing"
based upon a violation of Vehicle and Traffic Law § 1192, "but only upon a showing that
the person was given sufficient warning, in clear and unequivocal language, of the effect of such
refusal and that the person persisted in the refusal" (Vehicle and Traffic Law § 1194 [2] [f];
see People v Patel, 169 AD3d at 936; People v Sirico, 135 AD3d 19, 23 [2015]). "It is not mandatory that
a refusal to submit to a chemical test be expressly communicated in order to be admissible at
trial" (People v Warren, 160 AD3d
1132, 1135 [2018]; see People v Smith, 18 NY3d at 550). Rather, "[a] defendant can
signal an unwillingness to cooperate that is tantamount to a refusal in any number of ways,
including through conduct" (People v Smith, 18 NY3d at 550; accord People v
Warren, 160 AD3d at 1135). In determining whether a defendant's words or actions amount
to a refusal, courts must "view [the] defendant's actions in light of all the surrounding
circumstances and draw permissible inferences from equivocal words or conduct" (People v
Smith, 18 NY3d at 551; accord People v Warren, 160 AD3d at 1135).
Here, the evidence adduced at the suppression hearing and the trial (see People v Butcher, 36 Misc 3d
137[A], 2012 NY Slip Op 51436[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists
2012]) established that, at some point after defendant had been arrested and transported to a
precinct, the arresting officer requested that defendant submit to a chemical test and warned
defendant that "[a] refusal to submit to a chemical test, or any portion thereof, [would] result in
immediate suspension and subsequent revocation of [her] license or privilege to operate a motor
vehicle, whether or not [she was] found guilty of the charge for which [she was] arrested" and
that "[her] refusal to submit to a chemical test, or any portion thereof, [could] be introduced in
evidence against [her] at any trial, proceeding or hearing resulting from [her] arrest." Defendant
replied, "I would like a lawyer before doing anything." The officer told defendant that she could
not "delay the test because of a lawyer, but [he] would give her every opportunity to contact
someone if she would like." Defendant was then given an opportunity to call her attorney, but
called her father instead, who later arrived at the precinct. After defendant had a conversation
with her father, the officer asked defendant if she would submit to a chemical test, and defendant
replied, "Nothing without my lawyer." The officer, once again, gave defendant an opportunity to
contact her attorney, but defendant did not make any telephone call to an attorney.
Approximately 15 minutes thereafter, the officer stated to defendant, "[L]ook, this is the third
and the last time, are you going to take a chemical test?" Defendant did not respond verbally but
"shook her head left and right to indicate a negative response," and was ultimately deemed to
have refused the test.
The foregoing evidence established that defendant was clearly warned of the consequences
of refusing to take the requested chemical test and afforded an adequate opportunity to seek the
advice of counsel on whether to submit to that test (see People v O'Rama, [*3]78 NY2d 270, 280 [1991]; People v Warren, 160 AD3d at
1136). Furthermore, defendant was advised that she could not delay the administration of the test
by constantly asking for an attorney, and, when informed that it would be the last time that she
was going to be asked whether she would take a test, defendant shook her head, indicating a
negative response. Thus, upon consideration of all the attendant circumstances, and "drawing all
permissible inferences in the light most favorable to the People" (People v Smith, 18
NY3d at 551), we find that a reasonable motorist in defendant's position would have understood
that, unlike the prior encounters, her third response to the officer's request would be interpreted
by the officer as a binding refusal to submit to a chemical test (see People v Warren, 160
AD3d at 1136-1137; cf. People v Smith, 18 NY3d at 551; People v Butcher, 36 Misc 3d
137[A], 2012 NY Slip Op 51436[U]). Consequently, the District Court properly ruled that
evidence of defendant's refusal was admissible at trial.
We turn next to defendant's contention that the verdicts were not supported by legally
sufficient evidence and were against the weight of the evidence. To convict defendant of driving
while ability impaired, the People had to prove, beyond a reasonable doubt, that "by voluntarily
consuming alcohol, . . . defendant has actually impaired, to any extent, the physical and mental
abilities which [s]he is expected to possess in order to operate a vehicle as a reasonable and
prudent driver" (People v Cruz, 48 NY2d 419, 427 [1979]; see Vehicle and
Traffic Law § 1192 [1]; People v
Litto, 8 NY3d 692, 706 [2007]; People v McNamara, 269 AD2d 544, 545
[2000]). To convict defendant of resisting arrest, the People had to prove, beyond a reasonable
doubt, that defendant intentionally prevented or attempted to prevent a police officer from
effectuating an authorized arrest of herself or another person (see Penal Law §
205.30; People v Andrews, 155
AD3d 764, 765 [2017]). "An arrest is 'authorized' if, but only if, it 'was premised on
probable cause' " (People v Finch,
23 NY3d 408, 416 [2014], quoting People v Jensen, 86 NY2d 248, 253 [1995];
see People v Peacock, 68 NY2d 675, 676-677 [1986]). To convict defendant of speeding,
the People had to prove, beyond a reasonable doubt, that defendant had operated her vehicle in
excess of the speed limit (see Vehicle and Traffic Law § 1180 [d]).
Here, the evidence adduced at trial, viewed in the light most favorable to the People (see
People v Contes, 60 NY2d 620, 621 [1983]), failed to establish defendant's guilt of speeding
beyond a reasonable doubt. A reading from an untested radar device, coupled with a qualified
police officer's visual estimate of speed, suffices to prove the offense of speeding beyond a
reasonable doubt (People v Dusing, 5 NY2d 126, 128 [1959]; People v Krasniqi,
58 Misc 3d 158[A], 2018 NY Slip Op 50245[U] [App Term, 2d Dept, 9th & 10th Jud Dists
2018]; People v Palu, 47 Misc 3d
35, 37 [App Term, 2d Dept, 9th & 10th Jud Dists 2015]). A qualified police officer's
visual estimate, alone, is legally sufficient to support a conviction of speeding so long as "the
variance between the estimated speed and maximum permissible speed is sufficiently wide so
that [the factfinder] may be certain beyond a reasonable doubt that the defendant exceeded the
permissible limit" (People v Olsen, 22 NY2d 230, 232 [1968]; see People v
Raghubir, 39 Misc 3d 138[A], 2012 NY Slip Op 52476[U] [App Term, 2d Dept, 9th &
10th Jud Dists 2012]; People v
Ramaker, 9 Misc 3d 131[A], 2005 NY Slip Op 51592[U] [App Term, 2d Dept, 9th
& 10th Jud Dists 2005]). In this case, while the arresting officer testified that he had
"obtained a reading" from an untested radar device, he did not testify as to the rate of speed that
the reading revealed. Moreover, although the arresting officer testified that he was qualified to
visually [*4]estimate the speed of moving vehicles and that
defendant was traveling at 65 miles per hour in a 50-mile-per-hour zone, the 15 mile-per-hour
variance between the estimated speed of defendant's vehicle and the speed limit did not exceed
the 20-mile-per-hour variance deemed "clearly sufficient" to support a speeding conviction based
on a visual estimate (see People v Olsen, 22 NY2d at 232), and it cannot be concluded
that the totality of the evidence was legally sufficient to establish defendant's guilt of speeding
beyond a reasonable doubt (cf. People v
Moirzadeh, 31 Misc 3d 145[A], 2011 NY Slip Op 50939[U] [App Term, 2d Dept, 9th
& 10th Jud Dists 2011]).
However, the evidence adduced at trial, viewed in the light most favorable to the People
(see People v Contes, 60 NY2d at 621), was legally sufficient to establish defendant's
guilt of driving while ability impaired and resisting arrest. Specifically, with respect to the
conviction of driving while ability impaired, the arresting officer testified that, after he had
stopped defendant's vehicle for speeding, he observed that defendant had red and glassy eyes, and
detected an odor of alcohol on defendant's breath. Two other police officers who responded to
the scene also detected an odor of alcohol on defendant's breath and observed that defendant had
red eyes, slurred speech and unsteady gait. Defendant admitted that she had consumed
approximately 1.5 ounces of vodka a few hours before was stopped. Defendant failed all of the
field sobriety tests administered at the scene and refused to submit to a chemical test. The
foregoing evidence is legally sufficient to establish that defendant operated a motor vehicle while
her ability to operate the vehicle in a reasonable and prudent manner was impaired due to the
consumption of alcohol (see People v
Sines, 129 AD3d 1220, 1220-1221 [2015]; People v Chappell, 124 AD3d 1409, 1410 [2015]; People v Ferrara, 54 Misc 3d
145[A], 2017 NY Slip Op 50266[U] [App Term, 2d Dept, 9th & 10th Jud Dists
2017]).
As to the charge of resisting arrest, the evidence demonstrated that the arresting officer had
probable cause to arrest defendant, as the facts and circumstances known to the officer would
warrant a reasonable person, who possessed the same expertise, to conclude that defendant had
committed the offense of driving while intoxicated or at least of driving while ability impaired
(see People v Lepard, 83 AD3d
1214, 1215-1216 [2011]; People v Coulanges, 264 AD2d 853, 853 [1999]; People v Herz-Oliva, 66 Misc 3d
151[A], 2020 NY Slip Op 50294[U] [App Term, 1st Dept 2020], lv denied 35 NY3d
1027 [2020]). The officer's testimony regarding defendant's conduct in refusing to allow the
officer to handcuff her, coupled with the fact that two officers had been called to assist in
arresting defendant, demonstrates that defendant intentionally prevented an authorized arrest of
herself (see People v Lepard, 83 AD3d at 1216; People v Somerville, 72 AD3d 1285, 1287 [2010]; People v Myrick, 10 Misc 3d
138[A], 2005 NY Slip Op 52197[U] [App Term, 2d Dept, 9th & 10th Jud Dists
2005]).
With respect to defendant's challenge to the weight of the evidence regarding these two
offenses, although defendant presented the jury with a version of events that was substantially at
odds with that advanced by the People, this simply created a credibility question to be resolved
by the jury, which had the opportunity to view the witnesses, hear their testimony and observe
their demeanor (see People v
Schulz, 4 NY3d 521, 530 [2005]; People v Vecchio, 31 AD3d 674, 674 [2006]). The jury's
determination should be accorded great deference (see People v Romero, 7 NY3d 633, 644 [2006]; People v
Mateo, 2 NY3d 383, 410 [2004]; People v Bleakley, 69 NY2d 490, 495 [1987]) and
"should not be disturbed unless clearly unsupported by the record" (People v Castro, 299
AD2d 557, 558 [2002]). Here, there is no basis for disturbing the jury's credibility [*5]determinations in which it implicitly credited the prosecution
witnesses' account of the incident. Therefore, defendant's convictions of driving while ability
impaired and resisting arrest were not against the weight of the evidence.
Furthermore, as to defendant's contention that she was deprived of her constitutional right to
present a defense when the District Court precluded defense counsel from eliciting testimony
from defendant and her father that the arresting officer had told defendant's father to tell
defendant not to take a chemical test, "[t]rial courts are accorded wide discretion in making
evidentiary rulings and, absent an abuse of discretion, those rulings should not be disturbed on
appeal" (People v Carroll, 95 NY2d 375, 385 [2000]; accord People v Strife, 167 AD3d 1095, 1097 [2018]). "Although a
defendant may not be precluded from introducing extrinsic evidence where the issue to which the
evidence relates is material to those issues that the jury must decide" (People v Seabrook, 76 AD3d 606,
607 [2010] [internal quotation marks and citations omitted]), "[t]he general rule is that a
[defendant] may not introduce extrinsic evidence on a collateral matter solely to impeach
credibility" (People v Alvino, 71 NY2d 233, 247 [1987]; see People v Strife, 167
AD3d at 1097; People v Seabrook, 76 AD3d at 607).
Here, defense counsel asked the arresting officer on cross-examination whether he had told
defendant's father to tell defendant not to take a chemical test, to which the officer replied in the
negative. Defense counsel later sought to elicit testimony from defendant and her father that the
officer did tell defendant's father to tell defendant not to take a chemical test. The court precluded
defense counsel from introducing such testimony, but permitted defense counsel to elicit
testimony from defendant that she was advised not to take a chemical test. The court's ruling did
not constitute an abuse of discretion because the excluded testimony, concerning who had
advised defendant not to take a test and how defendant had been advised, would be collateral and
was offered solely to impeach the officer's credibility (see People v Powell, 27 NY3d 523, 532 [2016]; People v Werkheiser, 171 AD3d
1297, 1302 [2019]; People v
Turner, 145 AD3d 745, 746 [2016]).
Similarly unavailing is defendant's contention that she was deprived of her constitutional and
statutory right to be present during all material stages of her trial due to her absence from a
sidebar conference. Criminal defendants have a statutory and constitutional right to be present at
all material stages of trial, including ancillary proceedings (see US Const 6th, 14th
Amends; NY Const, art 1, § 6; CPL 260.20; People v Spotford, 85 NY2d 593, 596
[1995]). "In determining whether a defendant has a right to be present during a particular
proceeding, an essential factor is the potential for the defendant to meaningfully participate in the
subject discussions" (People v
Fabricio, 3 NY3d 402, 406 [2004]; see People v Spotford, 85 NY2d at 596). "An
important consideration is whether the proceeding involved factual matters about which the
defendant might have peculiar knowledge that would be useful in advancing the defendant's or
countering the People's position" (People v Fabricio, 3 NY3d at 406 [internal quotation
marks, brackets and citation omitted]; see People v Rodriguez, 85 NY2d 586, 590-591
[1995]; People v Calderon, 176
AD3d 594, 595 [2019]; People v
Bellamy, 34 AD3d 937, 939 [2006]). "However, a defendant's presence is not required
where the proceeding at issue involves only questions of law or procedure" (People v
Rodriguez, 85 NY2d at 591; see People v Fabricio, 3 NY3d at 406; People v
Collins, 99 NY2d 14, 19 [2002]; People v DePallo, 96 NY2d 437, 443 [2001]).
The sidebar conference at issue here involved only questions of law. Defendant did not [*6]have a right to be present at the sidebar conference, "as the subject
legal discussion did not implicate [her] peculiar factual knowledge or otherwise present the
potential for [her] meaningful participation" (People v Fabricio, 3 NY3d at 406; see
People v Rodriguez, 85 NY2d at 591; People v Bellamy, 34 AD3d at 939; People
v Hines, 260 AD2d 646, 647 [1999]).
Contrary to defendant's further contention, defendant was not deprived of a fair trial by the
prosecutor's tactic of asking her on cross-examination whether she believed the prosecution's
witnesses were lying. While courts have repeatedly cautioned prosecutors to avoid pressuring a
testifying defendant into characterizing the People's witnesses as liars (see e.g. People v
Galloway, 54 NY2d 396, 400 [1981]; People v Hicks, 100 AD3d 1379, 1379 [2012]; People v
Montgomery, 103 AD2d 622, 622 [1984]), "a distinction has to be made between a
defendant's testimony that conflicts with that of the People's witnesses and yet is susceptible to
the suggestion that the witnesses spoke out of mistake or hazy recollection and the situation
where, as here, the defendant's testimony leaves open only the suggestion that the People's
witnesses have lied. In the latter circumstance, the prosecution has the right to ask whether the
witnesses are liars" (People v Overlee, 236 AD2d 133, 139 [1997]; accord People v Lewis, 154 AD3d
1329, 1330 [2017]; see People v
Allen, 13 AD3d 892, 897 [2004]). Defendant's testimony flatly contradicted the police
officers' testimony in several material aspects. As the contradictions between defendant's
testimony and that of the police officers are not susceptible to the suggestion that the People's
witnesses spoke out of mistake or hazy recollection, but leave open only the suggestion that the
People's witnesses lied, it was not improper for the prosecutor to ask defendant whether she
believed that the People's witnesses had lied during their testimony (see People v Head, 90 AD3d 1157,
1158 [2011]; People v Hill, 47
AD3d 838, 839 [2008]; People v Pearson, 284 AD2d 202, 203 [2001]; People v
Swails, 250 AD2d 503, 503 [1998]; People v Overlee, 236 AD2d at 136-139).
Moreover, since defense counsel was the first to inject the word "lie" into the trial by repeatedly
stating, during counsel's opening statement, that the arresting officer was "going to lie to [the
jury]," defendant ought not be heard to complain when the prosecutor also utilizes such
terminology (see People v Damon,
78 AD3d 860, 860 [2010]; People v Overlee, 236 AD2d at 140).
Finally, we find that the sentence imposed upon defendant's convictions of driving while
ability impaired and resisting arrest was not harsh or excessive and that there were no
extraordinary circumstances or an abuse of discretion by the District Court that would warrant a
reduction of the sentence in the interest of justice (see People v Gigliuto, 22 AD3d 890, 892 [2005]).
Accordingly, the judgment convicting defendant of driving while ability impaired and
resisting arrest is affirmed, and the judgment convicting defendant of speeding is reversed and
the accusatory instrument charging that offense is dismissed.
ADAMS, P.J., GARGUILO and EMERSON, JJ., concur.
ENTER:
Paul Kenny
Chief Clerk
Decision Date: October 1, 2020