People v Sims (2022 NY Slip Op 00471)





People v Sims


2022 NY Slip Op 00471


Decided on January 27, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:January 27, 2022

110375
[*1]The People of the State of New York, Respondent,
v
Dewey Sims, Appellant.

Calendar Date:December 15, 2021

Before:Egan Jr., J.P., Clark, Pritzker and Colangelo, JJ.

Mitchell S. Kessler, Cohoes, for appellant.
P. David Soares, District Attorney, Albany (Erin N. LaValley of counsel), for respondent.



Colangelo, J.
Appeal from a judgment of the County Court of Albany County (Carter, J.), rendered March 15, 2018, upon a verdict convicting defendant of the crime of driving while intoxicated and the traffic infraction of refusal to take a breath test.
In April 2016, defendant was charged by indictment with felony driving while intoxicated (hereinafter DWI) and refusal to take a breath test, a traffic infraction, based upon allegations that, shortly after midnight on April 20, 2016, he operated a motor vehicle while intoxicated and rear-ended a vehicle that was stopped at a stop sign, and thereafter refused to submit to a chemical test. After a combined Huntley/Mapp/Dunaway hearing, County Court found that probable cause existed for the stop of his vehicle and ensuing arrest and denied defendant's motion to suppress his statements and refusal. Following a jury trial, defendant was convicted as charged and thereafter sentenced to a prison term of 1 to 3 years on the DWI conviction and to time served on the remaining conviction. Defendant appeals.
Defendant contends that County Court erred in denying his suppression motion because the stop of his vehicle was not based on probable cause. "The stop of a vehicle by law enforcement 'is a seizure implicating constitutional limitations' and, as such, is only permitted when the stop is 'based upon probable cause that a driver has committed a traffic violation'" (People v Jones, 190 AD3d 1013, 1014 [2021], lv denied 36 NY3d 1098 [2021], quoting People v Hinshaw, 35 NY3d 427, 430 [2020]; see People v Robinson, 97 NY2d 341, 349-350 [2001]). "Probable cause exists for an officer to effect a traffic stop where the officer observes the traffic violation" (People v Jones, 190 AD3d at 1014). "A suppression court's factual determinations and credibility assessments are entitled to great weight and will not be overturned on appeal unless clearly erroneous or contrary to the evidence" (People v Wideman, 192 AD3d 1384, 1385 [2021], lvs granted 37 NY3d 1060, 1062 [2021]).
At the suppression hearing, Justin Ferraioli, an officer with the City of Albany Police Department, testified that, while on routine patrol on April 20, 2016 at approximately 12:35 a.m., he witnessed defendant's vehicle "crash into the rear-end of the first vehicle." Ferraioli activated his emergency lights and "rolled" to the scene, exited his patrol car and approached each vehicle to determine if there were injuries. After determining that the driver of the first vehicle was "fine medically," he approached defendant's vehicle, which was "moving backwards." Ferraioli then asked defendant if he was okay and asked defendant to put the car in park. Defendant indicated that he was fine, but did not put the car in park. Ferraioli testified that defendant put the vehicle in reverse, as though he was going to flee, and Ferraioli reached through the rolled-down driver side window and grabbed defendant's shirt "to get his attention to put the car in park." [*2]Ferraioli testified that it took defendant approximately 30 seconds to put the car in park, during which time defendant argued with Ferraioli about putting the car in park and being stopped. Ferraioli testified that defendant behaved aggressively from the start and that defendant's eyes were red. Defendant produced his license but could not find his registration. Believing that defendant was intoxicated, Ferraioli called for assistance and, five or six minutes later, Richard Chu, the DWI enforcement officer and traffic safety officer with the Albany Police Department, arrived on the scene.
Chu approached defendant's vehicle and conducted a brief interview of defendant, during which defendant stated that the driver in front of him stopped short causing the collision, and that he was driving home from his cousin's house where he had only one beer. At the hearing, Chu testified that defendant had "glassy, bloodshot eyes," "[h]is face was like very pink and flush[ed]," "[t]here was an odor of alcoholic beverage emanating from his breath" and "[h]is responses to my questions were very slow, delayed, almost like he was in a confused state." Chu testified that in response to his request that defendant exit the vehicle, defendant "stumbled out of the vehicle." Chu testified that after defendant failed the first two field sobriety tests — the horizontal gaze nystagmus test and the walk-and-turn-test — defendant stated, "I'm not doing it, your tests. Try and make me" and he became uncooperative, hostile and aggressive and was yelling. Defendant also refused Chu's request that he submit to a pre-screening Alco-sensor test. Chu arrested defendant for DWI, read defendant his Miranda rights and DWI warnings and transported defendant to the police station. During the booking process at the station, defendant spontaneously stated, "I'm not drunk. I only had a couple of beers."
At 1:24 a.m. at the police station, Jared Jourdin, another Albany Police officer, read the following warnings to defendant: "You are under arrest for [DWI]. A refusal to submit to a chemical test or any portion thereof will result in the immediate suspension and subsequent revocation of your license or operating privilege whether or not you are found guilty of the charge for which you are arrested. Your refusal to submit to a chemical test . . . can be introduced in evidence against you at any trial, proceeding, or hearing resulting from this arrest. Will you submit to a chemical test to determine the alcohol or drug content of your blood?" Jourdin further advised defendant that "[a]nything other than a yes, including silence, will be considered a no and a refusal." Defendant then stated, "Not without my attorney." Jourdin testified that he then offered to call an attorney for defendant but defendant did not provide him with the name of an attorney to be called. Jourdin then inquired if defendant had an attorney he wanted him to call, to which defendant answered, "No, [*3]I will get one on my own." Jourdin then told defendant, "I'll call whoever you want, whatever attorney you want" and defendant replied, "No." At 1:26 a.m., Jourdin read the warning again, and defendant was silent. Jourdin read the warning a third time a short time later and informed defendant that this warning would be the final warning. Defendant again was silent. Defendant never provided a breath sample.
We agree with County Court that the stop of defendant's vehicle was based upon probable cause. Ferraioli's testimony establishes that he witnessed defendant rear-end another motorist and witnessed defendant's car moving backwards, as if he was attempting to leave the scene of the accident. A motorist commits the offense of leaving the scene of an accident without reporting when he or she leaves the scene of a motor vehicle accident having cause to know that property damage has occurred without exchanging driver's licenses and insurance identification cards with the other motorist (see Vehicle and Traffic Law § 600 [1] [a]). Defendant had put his vehicle in reverse, in an apparent attempt to leave the scene, and Ferraioli, who witnessed the incident and was at the scene, was required by law to request that driver's licenses and insurance information be exchanged (see Vehicle and Traffic Law § 600 [1] [b]). To be sure, Ferraioli's ultimate assessment that there was not very much damage, if any, did not relieve defendant from compliance with the Vehicle and Traffic Law. "A traffic stop effects a limited seizure of a vehicle's occupants and, to pass constitutional muster, the officer's action in stopping the vehicle must be justified at its inception and the seizure must be reasonably related in scope, including its length, to the circumstances which justified the detention in the first instance" (People v Rodriquez, 185 AD3d 1233, 1233 [2020] [internal quotation marks and citation omitted], lv denied 36 NY3d 975 [2020] [where detention of the defendant prior to the arrival of a second officer was within 10 minutes of the initial stop not suppressed as unduly lengthy]). In these circumstances, we agree with County Court that the stop of defendant's vehicle was justified at its inception and Ferraioli's belief that defendant was intoxicated justified the limited detention of five to six minutes until Chu arrived (see People v Blanche, 183 AD3d 1196, 1198 [2020], lv denied 35 NY3d 1064 [2020]).
Next, we find no merit to defendant's contention that he was denied the effective assistance of counsel when his counsel failed to make a "dispositive objection" at trial to the People's introduction of evidence that defendant refused to submit to a chemical test. In making this argument, defendant relies on People v Smith (18 NY3d 544, 551 [2012]), where the Court of Appeals held that refusal evidence was admitted in error at trial because, when the defendant was asked on the third occasion whether he was willing to take a chemical test, he had [*4]no reason to know that his time for deliberation was over. We find defendant's reliance on Smith to be misplaced. In that case, in response to each warning, the defendant indicated that he wished to speak with a lawyer and, in fact, had left a message and was waiting for his lawyer to call back (id. at 547). Here, although defendant stated "[n]ot without my lawyer" after the first warning, he was silent after the second and the third warnings, despite having been warned that the third warning was the final warning and that silence was the equivalent of a refusal. Unlike in Smith, the finality of the third warning was expressly conveyed to defendant and provided notice to him that his time for deliberation was over (see People v Warren, 160 AD3d 1132, 1136-1137 [2018], lv denied 31 NY3d 1154 [2018]). After the suppression hearing, County Court found that probable cause existed to arrest defendant for refusal to take a breath test. Based upon this ruling, there was no doubt that, to prove their case, the People would introduce refusal evidence at trial. Defense counsel's failure to make a "dispositive objection" when the People introduced evidence of refusal does not constitute ineffective assistance of counsel, as there was no likelihood of excluding this evidence.
"To establish a claim of ineffective assistance of counsel, a defendant is required to come forward with proof that the attorney failed to provide meaningful representation and that there was no strategic or other legitimate explanations for counsel's allegedly deficient conduct" (People v Sanchez, 196 AD3d 1010, 1013-1014 [2021] [internal quotation marks and citations omitted], lv denied 37 NY3d 1029 [2021]). An objection to the introduction of defendant's refusal to submit to a chemical test "was unlikely to have succeeded, and [defense] counsel cannot be ineffective for failing to advance an argument that has little or no chance of success" (People v Williams, 35 NY3d 24, 45 [2020]; see People v Chappell, 198 AD3d 1018, 1020-1021 [2021]; People v Campbell, 196 AD3d 834, 839 [2021], lv denied 37 NY3d 1025 [2021]). We therefore find that defendant's claim of ineffective representation lacks merit.
Egan Jr., J.P., Clark and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.