People v Dempster (2025 NY Slip Op 51882(U))

[*1]

People v Dempster

2025 NY Slip Op 51882(U)

Decided on April 17, 2025

County Court, Tompkins County

Miller, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 17, 2025
County Court, Tompkins County

People of the State of New York,

against
Jessica Dempster, Defendant.

Ind. No. 70274-23

Luke Z. Fenchel, Esq., Attorney for Defendant 
Emily Perks Quinlan, Esq., Tompkins County Assistant District Attorney 
Amelia Christian, Esq., Tompkins County Assistant District Attorney

Scott A. Miller, J.

Defendant is charged under a three-count indictment with Aggravated Driving While Intoxicated/Child in Vehicle, Endangering the Welfare of a Child, and Driving While Ability Impaired by Drugs. Defendant entered a not guilty plea and filed omnibus motions, dated November 24, 2023. The People filed opposition on February 27, 2024. A suppression hearing was held on May 1, 2024 and September 25, 2024. Defendant filed a corrected post-hearing memorandum on January 25, 2025. The People filed their post-hearing memorandum on February 25, 2025.
Dismissal of Indictment based upon Failure to Maintain Integrity/Legal Instructions:
The Defendant moves pursuant to CPL §210.35 that the Grand Jury proceeding was defective. The presentation of evidence, in this case, was made to twenty (20) Grand Jurors on August 24, 2023, who were continuously present and heard all the essential and critical evidence. CPL §190.25(1). The 20 Grand Jurors were unanimous on all three counts. CPL §210.35(2). The Prosecutor's legal instructions were proper and adequate. In fact the People provided the more stringent definition of impairment to the Grand Jurors. Finally, the Court finds that the Grand Jury proceedings conformed to the requirements of CPL Article 190 and that the Grand Jury's integrity was not impaired. CPL §210.35(5). Defendant's motion to dismiss the indictment based upon failure to maintain the integrity of the Grand Jury is DENIED.

 Dismissal of the Indictment based upon Legal Insufficiency:
Defendant moved to dismiss the indictment based upon legal insufficiency pursuant to CPL §210.20 and §230. Evidence before a Grand Jury, when viewed "in the light most favorable to the prosecution," is legally sufficient if there is competent evidence, which, if accepted as true, establishes every element of the offense charged or a lesser included offense and the Defendant's commission thereof. People v. Swamp, 84 NY2d 725,730 (1995). The Court has carefully inspected and reviewed all of the testimony and evidence before the Grand Jury. The Grand Jury was presented with evidence which, when assessed under the light most favorable to the People, sufficiently established each and every element of all charged offenses, as well as the identity of the Defendant. While it will be for a petit jury to decide whether the People can satisfy the burden of proving Defendant guilty beyond a reasonable doubt, at this motion stage, viewing the evidence in the light most favorable to the People, the Grand Jurors were provided with legally sufficient evidence that Defendant Dempster operated a motor vehicle on May 18, 2023, operated such vehicle while she was impaired by Oxycodone, and did so with her four-year old [*2]son in the car, thus endangering him. Defendant's motion to dismiss the indictment based upon legal insufficiency is DENIED.

Suppression of Statements/Physical Evidence/Blood Test
A suppression hearing encompassing the issues of Defendant's road-side detention, arrest, statements, and purported consent to take a blood test was held over two days on May 1, 2024, and September 25, 2024. The People called Kyle Sandy (in his personal capacity), Cornell Police Sgt. Blair MacDonald, NYSP Trooper Dylan Tiefenthaler, and NYSP Trooper Joseph Rieger. Almost all of the witnesses' interactions with Defendant were captured on body-camera and NYSP barracks camera recordings which were received into evidence. Notably, the issue of Defendant's consent to take a blood-test being the central issue of the hearing, and notwithstanding the fact that Defendant had previously provided an affidavit in support of said suppression motion, Defendant chose not to testify at the hearing. The Court then had only the People's witnesses to consider as well as the recordings of Defendant's interactions with law enforcement. The Court found the People's witnesses to be entirely credible and consistent with one another as well as consistent in all material and essential aspects with the audio/video recordings.
The Court finds that on May 18, 2023, at 2:30 p.m., the Defendant was driving a red Ford Mustang automobile west-south-west on Dryden Road/Route 366 in the Hamlet of Varna/Town of Dryden. Defendant abruptly stopped her vehicle without warning in the lane of traffic next to a USPS truck that was parked on the shoulder of the road thereby causing a three-car accident behind her vehicle. Sgt. Kyle Sandy of the Cornell University Police Department ("CUPD"), who was heading to work at the time, was directly behind the Defendant and was forced to come to a sudden stop behind defendant's vehicle. Sandy's vehicle was rear-ended. Ultimately three vehicles that had been traveling behind the defendant were involved in a property damage motor vehicle crash, including Sandy. Sandy (off-duty and in plain clothes during the incident) spoke to the drivers in the crashed vehicles behind him to confirm that they were uninjured, and then approached Defendant's vehicle. Sandy spoke with the Defendant who bizarrely stated, "let me guess, somebody blew or missed that red light behind us." 050124 T. at 17. There is no traffic light near the general vicinity or at the accident scene. Defendant appeared disoriented, spoke with slurred speech, and had to brace herself on her vehicle for balance when she exited it. Sandy did not identify himself as a police officer and merely interacted with Defendant in his civilian capacity.
Sandy requested a police response. New York State Police ("NYSP") Troopers responded. NYSP Trooper Joseph Rieger was directed by Sandy to Defendant's vehicle for investigation of possible impairment/intoxication while driving. Sandy then reported to work. After processing motor vehicle accident ("MVA") information for the other involved drivers, Trooper Rieger returned to Defendant's vehicle. Defendant admitted that she had been driving the vehicle. Defendant was having difficulty focusing on questions posed to her, and a child passenger (identified by Defendant as her son, confirmed at four (4) years old) was found in the car. Trooper Rieger observed that Defendant's "voice and her speech were slow and her words were a little slurred." 092524 T. at 78. Trooper Reiger asked Defendant to step out of her vehicle and perform standardized field sobriety tests ("SFSTs"). Defendant told Trooper Rieger that she was on prescribed medication and said that she expected to fail any SFSTs administered. The Defendant's statements and attention were scattered and lacked focus throughout her interaction with Trooper Reiger and Trooper Tiefenthaler. Although Defendant exhibited no nystagmus during the HGN test, she "kept getting distracted" and "abruptly left twice in the middle of the test." 092524 T. at 85. Defendant could not perform the walk and turn test, which is about the time Trooper Dylan Tiefenthaler arrived on scene in order to assist Trooper Rieger. Trooper Tiefenthaler also assisted in the efforts to have Defendant complete a walk and turn test. The video recording of this test clearly shows that Defendant could not even maintain balance in the starting position for such test. Trooper Tiefenthaler administered the modified Romberg test, [*3]which Defendant failed. Trooper Tiefenthaler testified that the Defendant, "estimated the passage of 30 seconds at 38 seconds, which showed us slow internal clock, and she was twisting her body to the right." 092524 T. at 17. Because of Defendant's inability to maintain her balance, the troopers "deemed that it was probably unsafe for [Defendant] to attempt to balance on one leg." 092524 T. at 88. Troopers Rieger and Tiefenthaler both concluded that Defendant was impaired by a drug or drugs based upon their observations and interactions with her.
The Court has also carefully reviewed the audio/video recordings of Defendant's roadside and police barracks interactions with law enforcement. This Court finds that the recordings are entirely consistent with the testimony of the People's witnesses. A review of the video/audio evidence unambiguously demonstrates that the Defendant appears to be under the influence and impaired by some type of drug. Defendant's speech is slurred, she is disheveled, she lacks coordination and balance, and she appears distracted and confused. No reasonable person would conclude Defendant was in any condition to safely operate a motor vehicle, let alone safely care for a four-year-old child in her obviously impaired condition. Alarmingly, at one point, the Defendant allowed her son to exit her vehicle and almost enter the road into oncoming traffic. Fortunately, Trooper Rieger prevented the child from going into the road. See, Axon body camera at 4:09 p.m.
After the Defendant failed the SFSTs, Trooper Tiefenthaler told her she was being placed under arrest for Driving While Ability Impaired by a Drug. Although the Defendant was advised by Trooper Tiefenthaler that she was being arrested at 4:55 p.m., she was not handcuffed until 5:31 p.m., as she was afforded 36 minutes to organize items in her vehicle. Defendant was subsequently searched incident to arrest, and loose pills were located on the Defendant's person, including Oxycodone (and approximately four other types of pills). Troopers transported Defendant and her son to NYSP barracks for Defendant's processing and evaluation by a Drug Recognition Expert ("DRE").
The Court concludes that Trooper Rieger and Trooper Tiefenthaler's questioning of Defendant at the scene of the multi-car accident was merely investigatory and she was not yet in custody or under arrest. Based upon the circumstances of Defendant's involvement in causing the multi-car accident, law enforcement was authorized to briefly detain Defendant for investigatory purposes and was not unreasonably prolonged under the circumstances. Further, based upon Rieger's and Tiefenthaler's observations of Defendant's erratic and uncoordinated behavior, her failure and inability to complete several SFSTs, her responses to investigatory questions, and her obvious impairment as evidenced on the body-camera evidence, the officers certainly possessed probable cause to arrest Defendant for Driving While Ability Impaired by Drugs. People v. Perez, 213 AD3d 984 (3rd Dept. 2023). Furthermore, "Miranda warnings are not required where police officers are investigating traffic accidents, since the investigation has not reached the custodial stage." See, People v. Aia, 105 AD2d 592, 593 (3rd Dept. 1984). See also, People v. Miller, 21 AD3d 1146 (3rd Dept. 2005) (investigatory detention during a roadside accident is not custody). The pills located on Defendant's person were also lawfully discovered as a result of a proper search incident to arrest. People v. Valo, 92 AD2d 1004 (3rd Dept. 1983). The Court finds that Defendant's arrest occurred precisely when Defendant was informed by Trooper Tiefenthaler that she was in fact being arrested at 4:55 p.m. Regardless of the fact that the troopers kindly afforded the Defendant another 36 minutes to organize her vehicle (which contained an adult dog and 6 puppies), Defendant nonetheless was not free to leave and was in fact under arrest at 4:55 p.m., even though she was not handcuffed until 5:31 p.m. Defendant's motion to suppress any evidence leading up to the time of her arrest is hereby DENIED.
Upon arrival at the State Police Ithaca barracks, Trooper Rieger read DWI refusal and Miranda warnings to Defendant. However, Trooper Rieger acknowledged that he only read the consent portion of the standard DWI refusal warning and he did not read the "refusal portion." [*4]092524 T. at 91-92.[FN1]
In response to the Miranda warnings, the Defendant did ask to make a phone call to a lawyer. See Axon video at 17:59 p.m. Later, Defendant also stated she wanted a "court appointed lawyer." See Axon video at 18:04 p.m. Trooper Rieger offered to get a phone book for Defendant to look up a lawyer and between approximately 18:15 p.m. to 18:17 p.m., Trooper Rieger facilitated two phone calls from Defendant to her lawyer in Phoenix, New York, one Armen Nazarian. The first call to Nazarian's office went to voicemail, but the second call to his cell was successful, and Nazarian explained to Defendant that he was now a full-time judge and could not provide her with any advice or even an attorney referral. See Axon body-camera 18:15 p.m. -18:17 p.m.
With respect to the chemical "breath test" for alcohol, based upon the totality of circumstances and upon the Court's careful review of all of the body-cam evidence, particularly 17:55 p.m. through 17:58 p.m. where both Troopers Rieger and Tiefenthal explained that the breath test machine located to the Defendant's left tests only for alcohol, the Court finds that the Defendant did in fact consent to such test. Defendant actually stated, "I'll take the test for alcohol." See Axon body-camera 17:57 p.m. Defendant successfully performed the chemical breath test between approximately 18:30 p.m. - 18:31 p.m. and said test result did indicate the absence of alcohol in Defendant's provided breath sample. Such test was also administered within two-hours of Defendant's arrest [VTL §1192(4)], and to the extent relevant such test is admissible.
At approximately 18:38 p.m.-18:40 p.m., DRE (Drug Recognition Expert) Trooper Drake asked Defendant if she wanted to call another lawyer, but Defendant declined. Defendant also declined to perform the DRE tests offered by Trooper Drake. See Axon body-camera 18:38 p.m. -18:40 p.m.
As already discussed in detail, hereinabove, Trooper Rieger did not Mirandize the Defendant until 17:59 p.m. Upon being Mirandized, the Defendant did request to call an attorney, one Armen Nazarian, Esq., with whom she eventually did confer as facilitated by the troopers. The Defendant also stated she wanted a court-appointed lawyer. Mr. Nazarian explained he was now a full-time judge and no longer practiced law. Shortly after this telephone call, Trooper Drake asked Defendant is she would like to call another attorney, to which she demurred.
The Court finds that once the Defendant requested to call an attorney, specifically one known to her whom she apparently had utilized previously, such request was an unequivocal invocation of her indelible right to counsel. People v. Mitchell, 2 NY3d 272, 276, 778 (2004). See also, People v. Andrews, 84 Misc 3d 585, 588 (Albany County Court, 2024) (indelible right to counsel attached when Defendant requested to call specific attorney). Therefore, any unMirandized statement made by Defendant from 4:55 p.m., when she was told she was under arrest, until the time that she requested to call counsel is SUPPRESSED if such statement was incriminating or in response to any question by law enforcement that was "reasonably likely to evoke an incriminating response from the suspect." People v. George, 127 AD3d 1496, 1497 (3rd Dept. 2015). It is unclear whether Defendant is seeking suppression of any particular statements during this time period. Consequently, the Court will hold an in limine hearing prior to the petit jury being sworn in order to make a more precise ruling. All non-spontaneous statements made by the Defendant once she sought to call her attorney are SUPPRESSED. Counsel is directed to the rule stated in People v. Grimaldi, 52 NY2d 611, 617 (1981) where the Court of Appeals explained:
It is true that previous cases have articulated a narrow exception to the rule that [*5]statements made by a defendant who possesses an indelible right to counsel must be suppressed. Admission of a truly spontaneous statement, blurted out by defendant without any "inducement, provocation, encouragement or acquiescence, [by the authorities] no matter how subtly employed" has been said to be proper, even if the statement was made in the absence of counsel (e. g., People v. Maerling, 46 NY2d 289, 413 N.Y.S.2d 316, 385 N.E.2d 1245). That a statement was volunteered or not made in direct response to questioning, however, does not render it spontaneous (e. g., People v. Lucas, 53 NY2d 678, 680, 439 N.Y.S.2d 99, 421 N.E.2d 494; People v. Rogers, 48 NY2d 167, 174, 422 N.Y.S.2d 18, 397 N.E.2d 709). Rather, it must satisfy the test for a blurted out admission, a statement which is in effect forced upon the officer (People v. Maerling, supra, 46 NY2d at p. 303, 413 N.Y.S.2d 316, 385 N.E.2d 1245).
Whether any statements after the indelible right to counsel attached were spontaneous can be argued at the in limine hearing prior to the petit jury being sworn.
Turning to the central issue explored at the suppression hearing - the blood test - Trooper Rieger explained, "we asked if she was willing to give a blood sample to show any indication of drugs in her blood. *** [and] she did agree to give a blood sample." 092524 T. at 97. Specifically, it was Trooper Tiefenthaler who asked Defendant at approximately 19:25 pm if she would consent to provide a blood sample for testing. Trooper Tiefenthaler testified that he asked Defendant if she would consent to provide a blood sample, and he explained she did consent. The Court found the officers credible on this issue. The Court's methodical review of all of Defendant's interactions with law enforcement, which were recorded, especially the time period from 19:25:00 p.m. through 19:26:30 p.m. unambiguously shows Trooper Tiefenthaler asked Defendant if she would consent to the hospital blood test. Trooper Tiefenthaler clearly explained that two vials of blood would be drawn at CMC by a nurse. The Defendant clearly responded in the affirmative at least twice noting, "ok" and "yeah." See Axon body camera 19:25:00 — 19:26:30 p.m. The Defendant was subsequently transported to Cayuga Medical Center by Tiefenthaler where a nurse collected a blood sample from the Defendant which was submitted to the NYSP laboratory. At no time while at CMC did Defendant ever state she was no longer willing to provide a blood sample. Again, the body camera of Defendant at CMC clearly shows that she is under no duress and has voluntarily consented to the blood test. The blood sample tested positive for Oxycodone. Exhibit E, Toxicology Report. Based upon the totality of circumstances which includes the credible testimony of the People's witnesses as well as the Court's careful review of the Axon body-camera evidence, it is clear that the People established by clear, positive and convincing evidence that the Defendant was in no way coerced, and in fact, expressly and voluntarily consented to the administration of the blood test.
However, the analysis does not end with this Court's finding that Defendant expressly and voluntary consented to the blood test. Two issues still must be resolved: 1) the attachment of Defendant's indelible right to counsel; and 2) the fact that Defendant's consent to take the blood test and administration of said blood test occurred more than two hours after Defendant's 4:55 p.m. arrest. In People v. Smith, 18 NY3d 544, 549 (2012), the Court of Appeals explained that as long as the Defendant is "afforded [ ] an opportunity to contact counsel, if the Defendant is unable reach counsel, the Defendant will be required to make such decision without the benefit of counsel's advice. The Smith Court explained: 
Vehicle and Traffic Law § 1194 does not address whether a motorist has a right to consult with a lawyer prior to determining whether to consent to chemical testing. However, if the motorist is arrested for driving while intoxicated or a related offense, this Court has recognized a limited right to counsel associated with the criminal proceeding. In People v. Gursey, 22 NY2d 224, 227 *** (1968), we held that if a defendant arrested for driving while under the influence of alcohol asks to contact an attorney before responding to a request to take a chemical test, the police "may not, without justification, prevent access between the criminal accused and his lawyer, available in person or by immediate [*6]telephone communication, if such access does not interfere unduly with the matter at hand." If such a request is made, and it is feasible for the police to allow defendant to attempt to reach counsel without unduly delaying administration of the chemical test, a defendant should be afforded such an opportunity. As we explained in Gursey, the right to seek the advice of counsel—typically by telephone— could be accommodated in a matter of minutes and in most circumstances would not substantially interfere with the investigative procedure. That being said, we made clear that there is no absolute right to refuse to take the test until an attorney is actually consulted, nor can a defendant use a request for legal consultation to significantly postpone testing. "If the lawyer is not physically present and cannot be reached promptly by telephone or otherwise," a defendant who has asked to consult with an attorney can be required to make a decision without the benefit of counsel's advice on the question (id. at 229***). Smith at 549.
Here, the troopers complied with the requirements of both Gursey and Smith when they facilitated two calls between Defendant and her last known counsel as well as offered to let Defendant call another attorney when her previous counsel informed her that he was now a judge. Now, with respect to the issue that Defendant's consent as well as the administration of the blood test occurred more than two hours after her arrest, such fact is not a bar to admissibility on the People's case in chief. It is well established that a defendant can consent to a chemical test of her breath or blood more than two hours after her arrest and such test will be admissible. '[T]he two-hour limitation contained in Vehicle and Traffic Law § 1194(2)(a) has "no application where *** [the] defendant expressly and voluntarily consented to administration of the blood test." People v. Atkins, 85 NY2d 1007, 1009 (1995). See also, People v. Zawacki, 244 AD2d 954 (4th Dept. 1997). Defendant suppression motion with respect to the admissibility of the blood test is DENIED.

Ventimiglia/Molineux/Sandoval
The Court will hold any Ventimiglia/Molineux/Sandoval hearings prior to the selection of petit jury.

Jury Trial Ready
This case is now trial ready. The Jury trial will commence on July 14, 2025, at 9:00 a.m. The Defendant and counsel must next appear before this Court on Tuesday May 13, 2025, at 9:00 a.m. in order for the Court to administer Parker warnings.
All other motions not expressly addressed are hereby DENIED. This constitutes the Decision of the Court entered upon notice to both parties. A notice of appeal, if applicable, must be filed within thirty (30) days of the date of this decision.
Dated: April 17, 2025
HON. SCOTT A. MILLER
Tompkins County Court Judge

Footnotes

Footnote 1: Defendant spent much time on the fact that the refusal portion of the warnings were not read to her. This issue is a red herring as Defendant clearly consented to both the chemical breath test and blood test and consequently there is no evidence of refusal to be placed before the jury.