People v Ortega (2025 NY Slip Op 51249(U))

[*1]

People v Ortega

2025 NY Slip Op 51249(U)

Decided on August 7, 2025

Criminal Court Of The City Of New York, Bronx County

Moore, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 7, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

against
Luis Fuentes Ortega, Defendant.

Docket No. CR-027549-25BX

For the Defendant: The Bronx Defenders
(by: Abhi Hu, Esq.)
For the People: Darcel D. Clark, District Attorney, Bronx County
(by: ADA Daniel Beloosesky)

Deidra R. Moore, J.

On November 3, 2024, Luis Fuentes Ortega (hereinafter referred to as "Defendant"), was arrested and charged with Vehicle and Traffic Law ("V.T.L.") § 1192[2-a][a], an unclassified misdemeanor, and related charges. The Defendant was arraigned the same day and released on his own recognizance.
Defendant moves for dismissal of the accusatory instrument pursuant to Criminal Procedure Law ("C.P.L.") §§ 30.30.[1][b] and 170.30[1][e]. Defendant contends that the statutory speedy trial period has elapsed because the People did not comply with their discovery obligations pursuant to C.P.L. §§ 245.20[1] and 245.50[3].
In the alternative, Defendant moves to suppress evidence collected from his vehicle, as well as the results of chemical tests and police observations, alleging these are the fruit of an illegal stop (Dunaway v New York, 442 US 200 [1979]; Mapp v Ohio, 367 US 643 [1961]; People v Ingle, 36 NY2d 413 [1975]; People v Johnson, 134 Misc 2d 474 [Crim Ct, Queens County 1987]. Defendant further contends that he was denied his limited right to consult with counsel before deciding whether to consent to testing (People v Smith, 18 NY3d 544 [2012]; People v Gursey, 22 NY2d 224 [1968]. Finally, Defendant contends that he did not consent to chemical and breath tests (People v Atkins, 85 NY2d 1007 [1995]).
Upon review and consideration of the submissions, court file and relevant legal authority, the Court finds that the prosecution exercised due diligence and made reasonable inquiries and efforts to disclose all known discoverable materials in its possession prior to filing the certificate of compliance. Therefore, Defendant's motion to dismiss pursuant to C.P.L. §§ 245.50[3] and 30.30 is DENIED.
Defendant's motion for hearings pursuant to Mapp/Dunaway/Johnson, Smith/Gursey, and Atkins is GRANTED.
RELEVANT FACTUAL AND PROCEDURAL
BACKGROUND
On November 3, 2024, the Defendant was arraigned on V.T.L. § 1192[2-a][a], aggravated driving while intoxicated ("DWI") per se, and related charges. Defendant was released on his own recognizance, and the case was adjourned to December 5, 2024, for conversion and discovery compliance.
On December 5, 2024, the prosecution was neither converted nor discovery compliant. The case was adjourned to February 19, 2025, again for conversion and discovery compliance. On January 28, 2025, the prosecution filed and served, off-calendar, a superseding information ("SSI"). On January 29, 2025, the prosecution filed and served, off-calendar, a certificate of compliance ("COC") and statement of readiness ("SOR").
On February 14, 2025, defense counsel e-mailed the assigned prosecutor, asserting that multiple discoverable items had not been disclosed. On February 16, 2025, the assigned prosecutor informed defense counsel that he had inquired with the NYPD about the missing discovery.
At the court appearance on February 19, 2025, the standing prosecutor answered ready for trial. Defense counsel made a record that some discoverable items had not been disclosed. The standing prosecutor stated that the assigned prosecutor had left no specific information about the items alleged to be outstanding, and the case was adjourned to March 20, 2025, for discovery conference.
Prior to the next appearance, the parties continued to confer about the disputed items, as well as about potential dispositions. On March 20, 2025, defense counsel requested a short adjournment for discovery conference, stating that the parties would continue to confer. The case was adjourned to April 2, 2025, again for discovery conference.
On April 1, 2025, the parties submitted a joint letter to the court, in which defense counsel asserted that some automatically discoverable items remained outstanding. At the April 2, 2025, discovery conference, the court declined to rule on the validity of the certificate of compliance and suggested a motion schedule. Defense counsel instead requested a final adjournment for possible disposition on consent. The case was adjourned to April 30, 2025, when the instant motion schedule was set.
By motion dated May 23, 2025, Defendant moved to invalidate the certificate of compliance and dismiss the accusatory instrument pursuant to C.P.L. §§ 245.50[4][c], 30.30[1][b], and 170.30[1][e], alleging that the prosecution was not ready for trial within the statutorily allotted ninety-day period. The People filed their opposition on June 16, 2025; the defense reply followed on June 27, 2025.
LEGAL FRAMEWORK
The prosecution must be ready for trial within ninety days of the commencement of the criminal action where, as here, the top count charged is a misdemeanor punishable by more than three months' imprisonment (C.P.L. § 30.30[1][b], and V.T.L. § 1193[1][b][i]).
Since January 1, 2020, the speedy trial clock has been tethered to the prosecution's statutory duty to obtain and share discovery with the defense (C.P.L. §§ 245.50[3] and 30.30[5]). Before the People may be deemed ready for trial, they must disclose "material and information" in their possession from twenty-one enumerated categories (C.P.L. § 245.20[1]). Discoverable items possessed by "any New York state or local police or law enforcement agency" are deemed to be in the prosecution's possession (C.P.L. § 245.20[2]). Where material otherwise discoverable under C.P.L. § 245.20[1] exists but is not in the prosecution's custody or control, [*2]the People are nonetheless required to "make a diligent, good faith effort to ascertain the existence of material or information discoverable under [C.P.L. § 245.20[1]] and to cause such material or information to be made available for discovery" (CP.L. § 245.20[2]). The People are not required, however, to obtain by subpoena duces tecum material or information which the defense may obtain in this manner (C.P.L. § 245.20[2]).
After the People have fulfilled their discovery obligations, they must file with the court and serve on the defense a certificate of compliance, certifying that they have exercised due diligence and made reasonable inquires and efforts to obtain and disclose all material subject to discovery under C.P.L. § 245.20[1] (C.P.L. § 245.50[1]). Absent "an individualized finding of special circumstances," the People "shall not be deemed ready for trial" until they have filed a valid certificate of compliance (C.P.L. § 245.50[3]).
The validity of a certificate of compliance hinges on whether the People exercised due diligence and made reasonable inquiries to comply with their discovery obligations under C.P.L. Article 245 prior to the COC's filing (People v Bay, 41 NY3d 200 [2023]). Effective August 7, 2025, Article 245 itself provides instruction for courts assessing due diligence in the discovery context.[FN1]
C.P.L. § 245.50[5], a newly added provision, directs courts to examine "the totality of the party's efforts to comply with the provisions of this article, rather than [to] assess the party's efforts item by item." C.P.L. § 245.50[5][a] goes on to enumerate a non-exhaustive list of factors to be considered when determining due diligence, discussed infra. C.P.L. § 245.50[5][b] further clarifies that "[t]he court's determination shall be based on consideration of all factors listed in paragraph [a] of this subdivision and no one factor shall be determinative."
DISCUSSION
I. The Parties' Arguments
A. The Disputed Items
The defense moves to invalidate the January 29, 2025, COC based on multiple disputed items. First, the defense asserts that the People belatedly disclosed the Medical Treatment of Prisoner Form, as well as property vouchers and chain of custody reports (citing C.P.L. § 245.20[1][e], which requires the prosecution to disclose "[a]ll statements related to the subject matter of the case, written or recorded or summarized in any writing or recording, made by persons who have evidence or information relevant to any offense charged or to any potential defense thereto, including all police reports, notes of police and other investigators, law enforcement agency reports, and statements written or recorded or summarized in any writing or recording, by persons to be called as witnesses at pre-trial hearings"). Second, the defense contends that the prosecution has yet to disclose the Interrogation Warnings Form or a complete copy of the Arresting Officer's Intoxicated Driver Report (id.) Finally, the defense asserts that the prosecution has not provided contact information for FDNY officers who provided medical treatment to the Defendant at the scene (citing C.P.L. § 245.20[1][c], which requires the prosecution to disclose the "names and adequate contact information for all persons other than law enforcement personnel whom the prosecutor knows to have evidence or information relevant to any offense charged or to any potential defense thereto," when this information is in the [*3]prosecution's actual or imputed possession).
B. The Defendant's Argument
The defense argues that the COC is invalid because the prosecution did not exercise due diligence to disclose all discoverable materials prior to the COC's filing. Defendant first notes that the prosecution did not comply with its discovery obligations pursuant to C.P.L. § 245.10[1][a][ii], which requires the prosecution to turn over automatically discoverable items within thirty-five calendar days after arraignment when the defendant is not in custody.[FN2]
Here, the defense points out, the prosecution did not begin to gather discovery until twenty-nine days after arraignment, and did not file and serve the certificate of compliance until the speedy trial clock had nearly elapsed, with little time remaining to correct any deficiencies (Defense Motion at 16; Defense Reply at 3).[FN3]

Defendant notes that the prosecution turned over only one page of the Arresting Officer's Intoxicated Driver Report, rather than the full version. The defense further notes that the prosecution did not share the Interrogation Warnings Form, a form typically generated when the NYPD Intoxicated Driver Training Unit ("IDTU") is involved in a DWI arrest, although this form was listed on the certificate of compliance as having been disclosed. Moreover, the defense avers, the prosecution's efforts to obtain this particular form did not begin until after the COC was filed and the defense notified the prosecution of its absence (Defense Motion at 14). As to the Medical Treatment of Prisoner Form, the property vouchers, and the chain of custody reports, Defendant emphasizes that these items were not received until February 18, 2025, after the COC's filing, and after defense counsel alerted the prosecution of the missing items via an e-mail sent on February 14, 2025 (Defense Motion at 14-15).
Finally, with regard to the contact information for the FDNY responders at the scene, Defendant notes that the responders are clearly visible on body worn camera footage from the scene and contends that, "[a]lthough the records of FDNY can be subpoenaed by the defense, the names and contact information for FDNY witnesses on scene of this alleged crime inarguably fall within the prosecutor's duties of disclosure pursuant to C.P.L. § 245.20[1][c]" (Defense Reply at 7).
C. The People's Argument
The People argue that they exercised due diligence prior to the COC's filing, first requesting discovery from the 45th Precinct on December 2, 2024. On January 17, 2025, the People sent a follow-up email to the 45th Precinct. On January 20, 2025, a discovery liaison at the 45th Precinct advised the prosecution that, although the 45th Precinct was listed in the arrest paperwork, PSA 8 was in possession of the requested discovery. The prosecution requested [*4]discovery from PSA 8 on January 23, 2025, then followed up by phone and e-mail to the discovery liaison at PSA 8 and the NYPD officers who responded to the scene at least three times over the next four days (People's Opposition at 5).
The People recount their specific efforts to obtain the property vouchers and chain of custody reports. In addition to their general discovery requests to the 45th Precinct and PSA 8, the prosecution e-mailed the arresting officer on January 28, 2025, to request all property vouchers and chain of custody reports related to the arrest. On January 29, 2025, the arresting officer provided three property vouchers, which were shared with the defense prior to the COC's filing: one voucher for DNA, one for "general property," and one for the defendant's vehicle (People's Opposition at 5). After defense counsel reached out to the prosecution on February 14, 2025, stating that the property vouchers and chain of custody reports were missing, the People again requested these items from the NYPD on the same day. Ultimately, on February 18, 2025, the prosecution received one additional property voucher, for Defendant's currency vouchered for safekeeping, and three chain of custody forms; these items were disclosed to the defense that day (id. at 6).
The prosecution also details its efforts to obtain the Medical Treatment Form. On January 28, 2025, the prosecution e-mailed the PSA 8 discovery liaison to specifically inquire about whether a Medical Treatment Form existed. After texting PSA 8's discovery liaison on January 29, 2025, and calling him on January 30, 2025, the prosecution received the Medical Treatment Form on February 2, 2025, and shared it with the defense that day (People's Opposition Exhibit 9).
The People contend that the Interrogation Warnings Form was listed as a disclosed item on the COC in error, although it is likely that this form does not exist. The prosecution has since followed up with PSA 8's discovery liaison, who told the assigned prosecutor on February 16, 2025, that he has "no documentation of a Miranda form" (People's Opposition at 10). The prosecution enumerates multiple subsequent inquiries to the IDTU officer and arresting officer about this form (id.). To date, the People have not been able to procure the Interrogation Warnings Form.
As to the Arresting Officer's Intoxicated Driver Arrest Report, the People affirm that they inquired about the report with NYPD personnel the same day defense counsel notified them that the report was incomplete (People's Opposition Exhibit 10). The assigned prosecutor then followed up by e-mail six times over the next week. When the assigned prosecutor finally spoke with the arresting officer on May 1, 2025, the officer stated that an issue with the scanner "melded" the first two pages together, but that he had compared the original copy with the copy disclosed to defense, and the latter contained no missing information (People's Opposition at 8).
Finally, with regard to the contact information for FDNY first responders, the prosecution contends that this is not automatically discoverable pursuant to C.P.L. § 245.20[1], as the missing information is contact information for civilian witnesses which the prosecution does not possess. Moreover, as the FDNY is not a law enforcement agency, the prosecution is not in imputed possession of any FDNY records from which to ascertain the names and contact information of those FDNY personnel who treated Defendant at the scene. The People point out that they would have to obtain the requested contact information by subpoenaing and reviewing FDNY records, which they are not required to do under C.P.L. § 245.20[2]. Moreover, the People argue, the defense is in a better position to obtain these records; as the records pertain to Defendant's treatment, defense counsel could procure the records by furnishing a signed HIPAA [*5]release as well as by subpoena (People's Opposition at 12-13).
II. The Court's Analysis
A. Legislative Revisions to Article 245
People v Bay, 41 NY3d 200 [2023], has, since its issuance, provided a framework for assessing the People's due diligence in the discovery context. Bay instructs courts to examine multiple factors when making a diligence determination, including: the efforts made by the prosecution to comply with their discovery obligations; the volume of discovery provided and the amount outstanding; the complexity of the case; how obvious missing materials would be to a prosecutor exercising due diligence; the explanation for the discovery lapse; and the prosecution's response when notified of missing discovery.
Effective August 7, 2025, Article 245 itself articulates those factors to be considered when assessing due diligence, some of which codify the Bay factors, and some of which are newly added. C.P.L. § 245.50[5][a] instructs courts to examine, among other factors:
1. the efforts made by the prosecutor to comply with the requirements of Article 245
2. the volume of discovery provided and the volume of discovery outstanding,
3. the complexity of the case,
4. whether the prosecutor knew that the belatedly disclosed or allegedly missing material existed,
5. the explanation for any alleged discovery lapse,
6. the prosecutor's response when apprised of any allegedly missing discovery,
7. whether the belated discovery was substantively duplicative, insignificant, or easily remedied,
8. whether the omission was corrected,
9. whether the prosecution self-reported the error and took prompt remedial action without court intervention, and
10. whether the prosecution's delayed disclosure of discovery was prejudicial to the defense or otherwise impeded the defense's ability to effectively investigate the case or prepare for trial.
Additionally, C.P.L. § 245.50[5][a] directs courts assessing due diligence to look to the totality of the prosecution's efforts to comply with their discovery obligations, rather than to assess efforts item by item, and C.P.L. § 245.50[5][b] advises that no one factor should be determinative in a diligence determination, as all factors should be considered.
B. The January 29, 2025, Certificate of Compliance
i. Medical Treatment Form, Property Documents, Miranda Form, Intoxicated Driver Report
Here, the People have demonstrated diligent efforts to obtain and disclose discoverable items prior to the COC's filing. The record supports that the prosecution engaged in repeated, documented efforts to secure discovery from multiple parties, including discovery liaisons at the 45th Precinct and PSA 8, the IDTU officer, and the arresting officer. While the Court observes that the prosecution did not comply with the thirty-five-day timeline set out in C.P.L. § 245.10[1], the People did begin to gather discovery during this window. Moreover, the prosecution demonstrates timely requests for those few specific items which were belatedly disclosed, as well as a review of their own discovery for completeness (People v Martinez, 229 [*6]NYS 3d 329, 332 [Sup Ct, Kings County 2025].[FN4]

As a seemingly routine misdemeanor DWI prosecution, this case is not particularly complex. However, the volume of belatedly disclosed or otherwise disputed discoverable items — comprising a handful of documents — is minimal compared to the amount of discovery shared (People's Opposition Exhibit D). Moreover, the belatedly disclosed items — the Medical Treatment Form, the property voucher for Defendant's currency, and the chain of custody reports — were promptly remedied by the prosecution.[FN5]
Nothing in the record indicates that the belated disclosure of these items resulted in prejudice to the defense or otherwise impeded investigation of the case.
The prosecution here credibly asserts that the Interrogation Warnings Form may not exist. The prosecution requested the form from the IDTU officer, arresting officer, and discovery liaison on multiple occasions, and was informed by the discovery liaison that no documentation of this form exists. The Defendant was removed from the scene for medical treatment, and no statement notice was served. While the People cannot be compelled to produce materials not in existence, the Court directs the People to file a supplemental certificate of compliance, removing the Interrogation Warnings Form from the list of disclosed items and summarizing their efforts to obtain this document.
Although the People affirm that the original copy of the Intoxicated Driver Report contains no information that was not already disclosed in the version shared with the defense, the People are directed to obtain and disclose the original copy itself.
ii. Contact Information for FDNY First Responders
In the instant matter, the names and contact information for FDNY personnel fall outside the scope of automatically discoverable material under C.P.L § 245.20[1] (People v Pierna, 74 Misc 3d 1072 [Crim Ct, Bronx County 2022]). Although the defense acknowledges its own ability to obtain FDNY records by subpoena, Defendant nonetheless argues that the names and contact information of FDNY responders should be provided by the People pursuant to C.P.L. § 245.20[1][c]. Defendant is correct that C.P.L. § 245.20[1][c] directs the prosecution to disclose the names and contact information for those witnesses known to have information pertaining to the offense charged; however, this requirement is tempered by the umbrella language set out by C.P.L. 245.20[1], which requires the prosecution to disclose material from the subsequently enumerated categories when the material is "in the possession, custody or control of the prosecution or persons under the prosecution's direction or control." The People affirm that they are not in possession of the disputed contact information and would themselves need to obtain [*7]this information by reviewing subpoenaed FDNY documents. Although C.P.L. 245.20[2] instructs the People to make reasonable inquires to obtain and share otherwise discoverable material outside their custody and control, this instruction is limited by the caveat that the prosecution is not required to subpoena records which the defense may itself obtain in this manner.
Here, the medical records containing the desired responder information concern solely the Defendant; defense counsel does not face the obstacle of obtaining medical records for a complaining witness or other potentially adversarial party (cf People v Harris, 86 Misc 3d 1235(A) [Crim Ct, Bronx County 2025]; People v Haggan, 85 Misc 3d 1224(A) [Sup Ct, New York County 2025]. Defense counsel here is in an equal — or better — position to obtain these records. While the prosecution could procure the FDNY documents via judicial subpoena, the defense could use the same method along with a HIPAA form signed by the person treated. Consequently, in the particular context presented here, the names and contact information for FDNY personnel are not automatically discoverable pursuant to C.P.L. § 245.20[1][c].
As the People have demonstrated due diligence and made reasonable inquiries to obtain and share discoverable material in their possession, custody and control, the certificate of compliance dated January 29, 2025, is valid.
THE CPL § 30.30 CALCULATION
The criminal action commenced with the filing of the accusatory instrument on November 3, 2025. The first day counted for speedy trial purposes is November 4, 2025 (People v Stiles, 70 NY2d 765, 767 [1987]). The prosecution filed and served a COC on January 29, 2025. As the prosecution exercised due diligence to obtain and disclose all discoverable material prior to the COC's filing, the speedy trial clock was tolled on this date (November 4, 2024 to January 29, 2025 — 87 days charged). The prosecution answered ready for trial on February 19, 2025, the next court date (0 days charged). On March 20, 2025, defense counsel requested a short adjournment for discovery conference, as the parties continued to confer (0 days charged). On April 2, 2025, the parties appeared for discovery conference. Defense counsel requested an adjournment for possible disposition on consent (0 days charged). On April 30, 2025, the instant motion schedule was set (0 days charged).
87 days are chargeable to the People.
CONCLUSION
Upon review and consideration of the submissions, court file and relevant legal authority, Defendant's motion to dismiss pursuant to CPL §§ 245.50[4][c], 30.30[1][b], and 170.30[1][e] is DENIED.
Defendant's motion for suppression is GRANTED to the extent that the Court orders pre-trial hearings pursuant to Mapp/Dunaway/Johnson, Smith/Gursey, and Atkins.
The People are directed to file a supplemental certificate of compliance, correcting the list of disclosed items and summarizing their efforts to obtain the Interrogation Warnings Form, as soon as practicable.
The People are further directed to disclose a complete copy of the Intoxicated Driver Report to Defendant within fifteen [15] business days.
This constitutes the opinion, decision, and the order of the Court.
Dated: August 7, 2025
Bronx, New York
Hon. Deidra R. Moore, J.C.C.

Footnotes

Footnote 1:2025 NY AB 3006 (NS), May 7, 2025, Section § 8. "This act shall take effect on the ninetieth day after it shall have become a law and shall apply to all criminal actions pending on such date and all actions commenced on or after such date."

Footnote 2:C.P.L. § 245.10[1][a] allows the prosecution an additional thirty calendar days to disclose automatic discovery when the discoverable materials are "exceptionally voluminous," or when the discoverable materials are not in the actual possession of the prosecution, "despite diligent, good faith efforts."

Footnote 3:The defense states that the prosecution's COC was filed on January 30, 2025, the 88th chargeable day. However, the Court notes that the COC was filed via EDDS on January 29, 2025, at 9:52 p.m. As the parties do not argue the issue of the COC being filed after business hours, the Court accepts the date of filing as January 29, 2025, the 87th chargeable day.

Footnote 4:Upon requesting 911 materials and receiving a response that none existed, the prosecution subsequently made an additional, expedited request. The assigned prosecutor correctly believed the negative response to be an error based on other items of discovery (People's Opposition Exhibit I).

Footnote 5:The prosecution disclosed the Medical Treatment Form to the defense on February 2, 2025, upon receipt from the arresting officer and prior to any notification by defense counsel. The prosecution disclosed the property voucher for the Defendant's currency and the chain of custody reports within four days of being notified by defense counsel that the property paperwork was incomplete.