People v Mesan-Moran (2025 NY Slip Op 25188)

[*1]

People v Mesan-Moran

2025 NY Slip Op 25188

Decided on August 14, 2025

Criminal Court Of The City Of New York, Bronx County

Moore, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on August 14, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

against
Yelfry Mesan-Moran, Defendant.

Docket No. CR-002809-25BX

For the Defendant: The Bronx Defenders
(by: Kaya Lawrence, Esq.)
For the People: Darcel D. Clark, District Attorney, Bronx County
(by: ADA Nadia Howe)

Deidra R. Moore, J.

On January 25, 2025, Yelfry Mesan-Moran (hereinafter referred to as "Defendant"), was arrested and charged with Vehicle and Traffic Law ("V.T.L.") § 1192[2], an unclassified misdemeanor, and related charges. Defendant was arraigned in Bronx County Criminal Court the next day and released on his own recognizance.
Defendant moves for dismissal of the accusatory instrument pursuant to Criminal Procedure Law ("C.P.L.") §§ 30.30.[1][b] and 170.30[1][e]. Defendant contends that the statutory speedy trial period has elapsed because the People did not comply with their discovery obligations pursuant to C.P.L. §§ 245.20[1] and 245.50[3].
In the alternative, Defendant moves to suppress the results of chemical tests and police observations as the fruit of an illegal stop (Dunaway v New York, 442 US 200 [1979]; Mapp v Ohio, 367 US 643 [1961]; People v Johnson, 134 Misc 2d 474 [Crim Ct, Queens County 1987]). Defendant further moves to suppress noticed statements, as well as evidence and testimony relating to identification procedures (People v Huntley, 15 NY2d 72 [1965], US v Wade, 388 US 218 [1967]).
Upon review and consideration of the submissions, court file and relevant legal authority, the Court finds that the prosecution did not exercise due diligence and make reasonable inquiries and efforts to ascertain the existence of and disclose all discoverable materials prior to filing the certificate of compliance. Defendant's motion to dismiss pursuant to C.P.L. §§ 245.50[3] and 30.30 is GRANTED.
Those branches of Defendant's motion to suppress statements, identification testimony, [*2]and other evidence are DENIED as moot.
 RELEVANT FACTUAL AND PROCEDURAL BACKGROUND
On January 26, 2025, the Defendant was arraigned on V.T.L. § 1192[2], driving while intoxicated ("DWI") per se, and related charges. Defendant was released on his own recognizance, and the case was adjourned to March 11, 2025, for conversion and discovery compliance.
On March 11, 2025, the prosecution was neither converted nor discovery compliant, and the case was again adjourned for this purpose, to April 7, 2025. On March 31, 2025, the prosecution filed and served, off-calendar, a superseding information ("SSI"). On April 4, 2025, the prosecution filed and served, off-calendar, a certificate of compliance ("COC") and statement of readiness ("SOR").
On April 7, 2025, the complaint was deemed an information, and the case was adjourned to May 6, 2025, for discovery conference.
On April 25, 2025, defense counsel sent an e-mail to the assigned prosecutor, asserting that multiple automatically discoverable items had not been disclosed. The prosecution disclosed additional items and filed a supplemental certificate of compliance ("SCOC") on May 5, 2025.
On May 6, 2025, the parties appeared before this Court for a discovery conference, at which time a motion schedule was set.
By motion dated May 27, 2025, Defendant moved to invalidate the certificate of compliance and dismiss the accusatory instrument pursuant to C.P.L. §§ 245.50[4][c], 30.30[1][b], and 170.30[1][e], alleging that the prosecution was not ready for trial within the statutorily allotted ninety-day period. The People filed their opposition on July 3, 2025; the defense reply followed on July 10, 2025.

LEGAL FRAMEWORK
The prosecution must be ready for trial within ninety days of the commencement of the criminal action where, as here, the top count charged is a misdemeanor punishable by more than three months' imprisonment (C.P.L. § 30.30[1][b], and V.T.L. § 1193[1][b][i]).
The speedy trial clock is statutorily tethered to the prosecution's duty under C.P.L. Article 245 to obtain and share discovery with the defense (C.P.L. §§ 245.50[3] and 30.30[5]). Before the People may be deemed ready for trial — thus tolling the speedy trial clock — they must disclose "material and information" in their possession from a non-exhaustive list of twenty-one enumerated categories (C.P.L. § 245.20[1]). Discoverable items possessed by "any New York state or local police or law enforcement agency" are deemed to be in the prosecution's possession (C.P.L. § 245.20[2]). Where material otherwise discoverable under C.P.L. § 245.20[1] exists but is not in the prosecution's custody or control, the People are nonetheless required to "make a [*3]diligent, good faith effort to ascertain the existence of [this material]" and make it available to the defense (CP.L. § 245.20[2]). The People are not required, however, to obtain by subpoena duces tecum material or information which the defense may obtain in this manner (C.P.L. § 245.20[2]).
After the People have fulfilled their discovery obligations, they must file with the court and serve on the defense a certificate of compliance, certifying that they have exercised due diligence and made reasonable inquires and efforts to obtain and disclose all material subject to discovery under C.P.L. § 245.20[1] (C.P.L. § 245.50[1]). Absent "an individualized finding of special circumstances," the People "shall not be deemed ready for trial" until they have filed a valid certificate of compliance (C.P.L. § 245.50[3]).
A COC's validity turns on whether the People exercised due diligence to comply with their discovery obligations under C.P.L. Article 245 prior to the COC's filing, and it is the People's burden to demonstrate that they acted with such diligence (People v Bay, 41 NY3d 200 [2023]). Effective August 7, 2025, Article 245 now provides instruction for courts assessing due diligence in the discovery context.[FN1]
C.P.L. § 245.50[5] directs courts to examine "the totality of the party's efforts to comply with the provisions of this article, rather than [to] assess the party's efforts item by item." C.P.L. § 245.50[5][a] articulates those factors to be considered when determining due diligence, discussed infra, while C.P.L. § 245.50[5][b] clarifies that "[t]he court's determination shall be based on consideration of all factors listed in paragraph [a] of this subdivision and no one factor shall be determinative."

DISCUSSION
I. The Parties' Arguments
A. The Disputed Items
The defense moves to invalidate the COC based on multiple disputed items, some of which Defendant contends were belatedly turned over, and some of which have not yet been disclosed.
The defense avers that the People belatedly disclosed the following items: 911 materials, including a ten-minute 911 call (C.P.L. § 245.20[1][g]); multiple police reports, including the prisoner holding pen roster, the police accident report, a chain of custody report, a property clerk invoice, and roll call logs (C.P.L. § 245.20[1][e]; and impeachment material for a testifying officer, including CCRB documents and an IAB log (C.P.L. § 245.20[1][k]). The defense contends that the prosecution has yet to disclose the prisoner movement slip (C.P.L. § 245.20[1][e]), IAB log attachments related to IAB logs for three testifying officers (C.P.L. § [*4]245.20[1][k]), and the names and adequate contact information for three civilian witnesses at the scene (C.P.L. § 245.20[1][c]).
B. The Defendant's Argument
The defense argues that the COC is invalid because the prosecution did not exercise due diligence prior to the COC's filing, as multiple automatically discoverable items had not been provided. In particular, the prosecution did not timely share the ten-minute 911 call and other 911 materials, the prisoner holding pen roster, a chain of custody report and property clerk invoice, the police accident report, and roll call logs. The prosecution also failed to timely provide impeachment material for the arresting officer, whom the prosecution designated as a testifying witness; this impeachment material consisted of a Civilian Complaint Review Board ("CCRB") report and an NYPD Internal Affairs Bureau ("IAB") log for a substantiated claim.
Defendant notes that the prosecution did not provide several of the belated materials until after having been alerted of their absence by defense counsel. Defendant further contends that, although the People subsequently provided these materials and filed a supplemental certificate of compliance on May 5, 2025, the prosecution did not adequately explain the reasons for the belated disclosures. Regarding the 911 materials, CCRB report, and IAB log, the People affirmed that they "believed this material had been included in our prior production," and that the items were promptly disclosed following notification of the omission. Regarding the prisoner holding pen roster, roll call logs, chain of custody report and property clerk invoice, as well as the police accident report, the People affirmed that "[d]espite the exercise of diligent, good faith efforts, this material was previously unavailable to the People, but has now been obtained by the People" (Defense Motion Exhibit C).
Defendant contends that the prosecution has, to date, not turned over log attachments to IAB logs for multiple testifying officers and therefore has not complied with its obligations to disclose impeachment material pursuant to C.P.L. § 245.20[1][k][iv], which requires the People to disclose "[a]ll evidence and information that relate to the subject matter of the case, including that which is known to police or other law enforcement agencies acting on the government's behalf in the case, that tends to. . . impeach the credibility of a testifying prosecution witness."
Finally, Defendant contends that the prosecution failed to disclose the names and contact information for three civilian witnesses, as required by C.P.L. § 245.20[1][c], which mandates that the People share "[t]he names and adequate contact information for all persons other than law enforcement personnel whom the prosecutor knows to have evidence or information relevant to any offense charged or to any potential defense thereto," when this information is in the "possession, custody or control of the prosecution or persons under the prosecution's direction or control." The defense notes that the three witnesses are visible on the majority of the disclosed body-worn camera files.[FN2]
The witnesses had been involved in an earlier accident and were [*5]speaking to officers when they observed the accident which led to Defendant's arrest. Moreover, one witness could be seen on BWC footage commenting on the Defendant's behavior and informing an officer that he had seen the Defendant prior to the incident (Defense Motion at 24). One of the three civilian witnesses was subsequently arrested, further indicating that NYPD was in possession of this witness's name and contact information.
C. The People's Argument
The People argue that they exercised due diligence prior to the COC's filing, first making a general discovery request to the precinct on February 27, 2025. The People note that they followed up via e-mail with the precinct on March 17 and 27, 2025, as well as on April 3, 2025, and made "numerous phone calls to the precinct including but not limited to on April 17, 2025" (People's Opposition at 11).[FN3]
The People further aver that they shared voluminous discovery with the defense, "approximately four hundred and seventy-six (476) discovery documents" (id. at 12); by comparison, the number of belatedly disclosed items was quite small.
The People contest Defendant's assertion that all of the 911 materials were not timely shared, stating instead that only the 911 call and the 911 event chronology were missing, while the 911 radio message, heading, and certification were timely disclosed. The People attribute the belated disclosure of the 911 call and event chronology to "technical error" rather than "human error," contending that a problem must have occurred when copying the 911 materials into the OneDrive folder to be shared with the defense.
Although the People requested all documents relating to the case from the NYPD, the NYPD did not produce multiple items until after the COC was filed. The People point out that they shared the chain of custody report, property clerk invoice, and vehicle accident report without notification from or prompting by the defense.
Finally, the People relay that the NYPD informed them that the prisoner movement slip does not exist. Moreover, when the People communicated with the arresting officer about the civilian witness contact information, the arresting officer stated that he did not have any contact information for civilian witnesses and did not believe that any civilians had observed the incident (People's Opposition Exhibit A).
II. The Court's Analysis
A. Due Diligence Under C.P.L. Article 245 After August 7, 2025
Effective August 7, 2025, C.P.L. Article 245 contains a new provision to guide courts [*6]tasked with assessing the People's due diligence in the discovery context. C.P.L. § 245.50[5] directs courts to examine the totality of the prosecution's efforts to comply with their discovery obligations, rather than to analyze efforts item by item. C.P.L. § 245.50[5][a] then provides a list of factors "relevant" to the assessment, some of which were first articulated in People v Bay, 41 NY3d 200 [2023]. C.P.L. § 245.50[5][a] instructs courts to consider, among other factors:
1. the efforts made by the prosecutor to comply with the requirements of Article 245
2. the volume of discovery provided and the volume of discovery outstanding,
3. the complexity of the case,
4. whether the prosecutor knew that the belatedly disclosed or allegedly missing material existed,
5. the explanation for any alleged discovery lapse,
6. the prosecutor's response when apprised of any allegedly missing discovery,
7. whether the belated discovery was substantively duplicative, insignificant, or easily remedied,
8. whether the omission was corrected,
9. whether the prosecution self-reported the error and took prompt remedial action without court intervention, and
10. whether the prosecution's delayed disclosure of discovery was prejudicial to the defense or otherwise impeded the defense's ability to effectively investigate the case or prepare for trial.
C.P.L. § 245.50[5][b] advises that no one factor is determinative in a diligence analysis, as the determination must be based on a consideration of all the listed factors.
B. The April 4, 2025, Certificate of Compliance
i. Belatedly Disclosed Items
The People acknowledge that multiple discoverable items were disclosed after the filing of the COC, including multiple police reports, the 911 call, and some impeachment information for a testifying officer. However, "belated disclosure[s] will not necessarily establish a lack of due diligence or render an initial COC improper" (People v Bay, 41 NY3d 200, 212 [2023]). Analysis of the People's due diligence is "fundamentally case-specific," and "will turn on the circumstances presented" (id.)
An evaluation of the first factor under C.P.L. § 250[5][a], the People's efforts to comply with their discovery obligations under C.P.L. Article 245, weighs against a finding that the People exercised due diligence. First, the People did not comply with the disclosure timeline mandated by C.P.L. § 245.10[1][a][ii], which requires automatically discoverable items to be shared with the defense within thirty-five days after arraignment when the Defendant is not in custody. The prosecution did begin to gather discovery during this window, ultimately sharing discovery on the sixty-eighth day after arraignment.
The prosecution affirms that, prior to the COC's filing, an initial discovery request was [*7]sent to the precinct, followed by multiple e-mail reminders in March and April of 2025. However, the prosecution presents for the Court's review only the initial general discovery request made on February 27, 2025, a one-line follow-up e-mail on March 17, 2025, and an e-mail sent on April 3, 2025 (People's Opposition Exhibit A). The People affirm that they made "numerous" phone calls to the precinct, but do not provide the dates of the calls or the names of those with whom the People spoke, except to note that a phone call was made on April 17, 2025, after the COC was filed.
The People affirm in their supplemental certificate of compliance that, "despite the exercise of diligent, good faith efforts" the prisoner holding pen roster, roll call logs, chain of custody report, property clerk invoice, and vehicle accident report were "previously unavailable to the People" (Defense Motion Exhibit C). The People do not indicate when these items came into their actual possession, or whether they were aware of the documents' absence at the time of the COC's filing. Nowhere did the original COC indicate that any known discoverable items remained outstanding.[FN4]

Finally, nothing in the People's affirmation indicates a review of their discovery for completeness and accuracy, a key step in the exercise of due diligence (People v Martinez, 229 NYS 3d 329, 332 [Sup Ct, Kings County 2025]; People v Ortega, 2025 NY Slip Op 51249(U) [Crim Ct, Bronx County]. To the contrary, the facts presented suggest that the People did not perform such a review, as the multiple omitted police reports, the absence of the 911 call due to technical error, and the prosecution's response to Defendant's request for witness contact information — which makes clear that the People did not review their BWC footage — speak to this lack of review.
However, the Court credits the prosecution with providing a multitude of discovery items and agrees with the People that the number of belatedly disclosed or outstanding items is comparably small. The Court also credits the People with correcting the initial omission of the accident report, the chain of custody report, and the property clerk invoice without prompting by the defense.
As to the substantive value of the belatedly disclosed items, several of these documents, including the holding pen roster, the chain of custody report, the property clerk invoice, and the roll call logs, have little substantive significance. While the CCRB report and IAB log are more significant, these items were disclosed prior to trial, allowing the defense time to review them for possible use during cross examination. Consequently, nothing in the record demonstrates that the [*8]belated disclosure of this impeachment material caused prejudice to the Defendant or otherwise impeded Defendant's investigation. Like the belatedly disclosed impeachment material, the contents of the 911 call are not duplicative or insignificant. However, as the Court has not been provided the contents of the 911 call, no assessment can be made as to whether the call's belated disclosure resulted in possible prejudice to Defendant or otherwise impeded his ability to investigate his case.
ii. IAB Log Attachments
This Court has previously held that IAB log attachments for substantiated and unsubstantiated claims are automatically discoverable. In reaching this conclusion, the Court relied on Article 245's presumption of openness, as well as the plain language of C.P.L. § 245.20[1][k] (People v Garcia, 2025 NY Slip Op 50899(U) [Crim Ct, Bronx County]; see also People v Zachary L, 22025 NY Slip Op 50903(U) [Crim Ct, Kings County]).
Under the newly enacted revisions to Article 245, the statutory language with respect to several discovery categories has been altered. For example, C.P.L. § 245.20[1][a],[b],[h], and [i] previously mandated the disclosure of certain types of material that "relate to the subject matter of the case"; now, however, the People must disclose this material when it "relate[s] to the subject matter of the charges against the defendant in the instant case or a defense thereto." The Legislature did not, however, alter the language of the statute which addresses the disclosure of impeachment material, as this paragraph retains the arguably broader language which was in effect until the recent revisions. C.P.L. §245.20[1][k] continues to mandate the disclosure of "[a]ll evidence and information that relate to the subject matter of the case. . .that tends to. . . impeach the credibility of a testifying prosecution witness." While the prosecution here contends that the IAB log attachments do not relate to the "subject matter of the case," this Court has previously held that material which speaks to the credibility of a testifying witness is necessarily related to the subject matter of the case (People v Garcia, 2025 NY Slip Op 50899(U) [Crim Ct, Bronx County], citing People v Coley, — NYS3d —, 2025 NY Slip Op 01945 [2nd Dept]).
Here, the prosecution has demonstrated no knowledge of the actual contents of the IAB attachments, nor recounted any efforts to share them, instead arguing that this material is wholly outside the People's discovery obligations — an argument which the Court rejects.
iii. Contact Information for Civilian Witnesses
In the instant matter, the People did not adequately respond to Defendant's request for the names and contact information for civilian witnesses at the scene. Defendant affirms that the civilian witnesses are visible in multiple body-worn camera files, that officers can be observed on the footage speaking with one of the witnesses about Defendant, and that at least one of the witnesses was himself subsequently arrested. The prosecution provides little detail to rebut Defendant's assertion, instead relying on the arresting officer's word that there were no witnesses to the Defendant's arrest, or to the incident which preceded it. The People's demonstrated inquiry into the existence of the witnesses consists of a cut-and-paste e-mail to the arresting officer, stating that "defense counsel is requesting whether you have 'witness contact information for [*9]three civilians who witnessed the incident/car stop?'", without further detail or context (People's Opposition Exhibit A). Moreover, correspondence between defense counsel and the assigned prosecutor — in which the prosecution asks defense counsel if the purported witnesses are visible on the BWC footage, and defense counsel responds affirmatively — seems to indicate that the People failed to review their own BWC footage before certifying their discovery compliance and trial readiness.
C.P.L. § 245.20[1][c] directs the prosecution to disclose the names and contact information for those witnesses known to have information relevant to the offense charged or to any potential defense thereto, when the information is "in the possession, custody or control of the prosecution or persons under the prosecution's direction or control." As the defense points out, it is possible, even likely, that the witnesses' contact information is attached to the case file of the witness who was arrested at the scene in a separate matter. Though not referenced in Defendant's paperwork, this information would nonetheless be in the NYPD's custody, and therefore the People's imputed possession (C.P.L. § 245.20[2]). While the Court acknowledges that obtaining this contact information would require the People to make more specific or robust inquiries than if the witnesses' information was contained in the Defendant's arrest paperwork, these inquiries are part of the prosecution's obligations under Article 245. C.P.L. § 245.20[2] instructs the People to make reasonable inquires to obtain and share otherwise discoverable material even when this material is outside the People's actual or imputed possession; here, the material was in the People's imputed possession, though seemingly attached to another arrestee's case file.
The civilian witness contact information remains outstanding. Because witness memory degrades over time, the failure to disclose this material may have prejudiced the defense; in any case, it has certainly impeded the defense's ability to investigate its case and prepare for trial.
As the People have not carried their burden to establish that they acted with due diligence and made reasonable inquiries and efforts to obtain and share discoverable material in their possession, custody and control, the certificate of compliance dated April 4, 2025, is invalid.

THE CPL § 30.30 CALCULATION
The criminal action commenced with the filing of the accusatory instrument on January 26, 2025. The first day counted for speedy trial purposes is the day after the commencement of the criminal action, January 27, 2025 (People v Morrison, 231 NYS 3d 922 [Crim Ct, Bronx County 2025]). The prosecution filed and served the COC on April 4, 2025. As discussed supra, the prosecution did not exercise due diligence prior to the COC's filing. The certificate of compliance was therefore invalid and failed to toll the speedy trial clock. When the supplemental certificate of compliance was filed on May 5, 2025, the People had not exercised due diligence or made reasonable inquiries to obtain and share contact information for the civilian witnesses. Consequently, the supplemental certificate of compliance was also invalid and failed to toll the speedy trial clock. The speedy trial clock was first tolled when the instant motion schedule was set on May 6, 2025 (January 27, 2024 — May 6, 2025 = 100 days charged).
100 days are chargeable to the People, and their statutorily allotted speedy trial time has elapsed.

CONCLUSION
Upon review and consideration of the submissions, court file and relevant legal authority, Defendant's motion to dismiss pursuant to CPL §§ 245.50[4][c], 30.30[1][b], and 170.30[1][e] is GRANTED.
The remaining branches of Defendant's motion are DENIED as moot.
This constitutes the opinion, decision, and the order of the Court.
Dated: August 14, 2025
Bronx, New York
Hon. Deidra R. Moore, J.C.C.

Footnotes

Footnote 1:2025 NY AB 3006 (NS), May 7, 2025, Section § 8. "This act shall take effect on the ninetieth day after it shall have become a law and shall apply to all criminal actions pending on such date and all actions commenced on or after such date."

Footnote 2:Defense counsel affirms that she received multiple BWC files specifically related to this separate arrest but has yet to receive the names and contact information for the witnesses present, including the arrestee (Defense Motion at 23).

Footnote 3:The People's Opposition first indicates that discovery requests were made to the 45th Precinct; later portions of the motion state that requests were made to the 41st Precinct (2; 10-11).

Footnote 4:Among the newly added language to Article 245, C.P.L. § 245.50[1] now directs the prosecution to "identify the items that the prosecution is required to disclose and of which the prosecution is aware, but has been unable to obtain despite the exercise of due diligence as evaluated under this section." Though this particular language is new, it does not substantively alter the People's pre-existing duty to flag items of discovery known to the prosecution but not yet disclosed. To fail to flag such material, when its existence is known to the prosecution, would be to falsely certify under C.P.L. § 245.50[1] that all known material had been disclosed.