People v Hylton (2025 NY Slip Op 51418(U))

[*1]

People v Hylton

2025 NY Slip Op 51418(U)

Decided on September 8, 2025

Criminal Court Of The City Of New York, Bronx County

Moore, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 8, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

against
Renford Hylton, Defendant.

Docket No. CR-000790-25BX

For the Defendant
The Bronx Defenders
(by: Audrey Pan, Esq.)
For the People
Darcel D. Clark, District Attorney, Bronx County
(by: ADA Bobby Chris Pavlatos)

Deidra R. Moore, J.

On January 11, 2025, Renford Hylton (hereinafter referred to as "Defendant"), was arrested and charged with Vehicle and Traffic Law ("V.T.L.") § 1192[2], driving while intoxicated, and related charges. Defendant's arrest followed his alleged involvement in a collision with the complainant's vehicle. Defendant was arraigned in Bronx County Criminal Court the next day.
Defendant moves for dismissal of the accusatory instrument pursuant to Criminal Procedure Law ("C.P.L.") §§ 30.30[1][b] and 170.30[1][e]. Defendant contends that the statutory speedy trial period has elapsed because the People did not comply with their discovery obligations pursuant to C.P.L. §§ 245.20[1] and 245.50[3].
In the alternative, Defendant moves to suppress the results of chemical tests and police observations, alleging these are the fruit of an illegal stop (Dunaway v New York, 442 US 200 [1979]; Mapp v Ohio, 367 US 643 [1961]; People v Ingle, 36 NY2d 413 [1975]; People v Johnson, 134 Misc 2d 474 [Crim Ct, Queens County 1987]). Defendant further contends that he was denied his limited right to consult with counsel before deciding whether to consent to testing (People v Smith, 18 NY3d 544 [2012]; People v Gursey, 22 NY2d 224 [1968]), and that he did [*2]not consent to chemical and breath tests (People v Atkins, 85 NY2d 1007 [1995]). Defendant also moves to suppress properly noticed statements and identification procedures (People v Huntley, 15 NY2d 72 [1965]; US v Wade, 388 US 218 [1967]).
Upon review and consideration of the submissions, court file and relevant legal authority, the Court finds that the prosecution exercised due diligence and made reasonable inquiries and efforts to disclose discoverable materials prior to filing the certificate of compliance. Defendant's motion to dismiss pursuant to C.P.L. §§ 245.50[4][c] and 30.30 is DENIED.
Defendant's motion for hearings pursuant to Mapp/Dunaway/Johnson, Smith/Gursey/Atkins, Huntley, and Wade, is GRANTED.
The People are ORDERED to furnish additional discovery, discussed infra.
RELEVANT FACTUAL AND PROCEDURAL
BACKGROUND
On January 12, 2025, Defendant was arraigned on a top charge of V.T.L. § 1192[2], driving while intoxicated per se, an unclassified misdemeanor. The case was adjourned to January 14, 2025, for a hardship hearing regarding the suspension of Defendant's driver's license. On January 14, 2025, the court granted Defendant a hardship license and the case was adjourned to March 17, 2025, for conversion and discovery compliance.
On March 17, 2025, the prosecution was not discovery compliant, and no supporting deposition had been served. The case was adjourned, again for conversion and discovery compliance, to April 21, 2025. On March 27, 2025, the prosecution filed and served, off-calendar, a supporting deposition. On April 10, 2025, the prosecution filed and served, off-calendar, an automatic disclosure form ("ADF"), certificate of compliance ("COC"), and statement of readiness ("SOR"). On April 14, 2025, the prosecution served additional discovery on the defense and filed and served a supplemental certificate of compliance ("SCOC").
On April 21, 2025, Defendant was arraigned on the information. The defense maintained that multiple discoverable items had not yet been disclosed, and the case was adjourned to May 6, 2025, for discovery conference. On May 6, 2025, the parties appeared before this Court for a discovery conference, at which time the instant motion schedule was set.
By motion dated May 23, 2025, Defendant moved to invalidate the certificate of compliance and dismiss the accusatory instrument pursuant to C.P.L. §§ 245.50[4][c], 30.30[1][b], and 170.30[1][e], alleging that the prosecution was not ready for trial within the statutorily allotted ninety-day period. The People filed their opposition on July 14, 2025. The defense reply followed on July 28, 2025.
LEGAL FRAMEWORK
The prosecution must be ready for trial within ninety days of the commencement of the [*3]criminal action where, as here, the top count charged is a misdemeanor punishable by more than three months' imprisonment (C.P.L. § 30.30[1][b], and V.T.L. § 1193[1][b][i]).
The speedy trial clock is statutorily bound to the prosecution's discovery obligations under C.P.L. Article 245 (C.P.L. §§ 245.50[3] and 30.30[5]). Before the People may be deemed ready for trial — thus tolling the speedy trial clock — they must disclose "material and information" in their possession from a non-exhaustive list of twenty-one enumerated categories (C.P.L. § 245.20[1]). Discoverable items possessed by "any New York state or local police or law enforcement agency" are deemed to be in the prosecution's possession (C.P.L. § 245.20[2]). Where material otherwise discoverable under C.P.L. § 245.20[1] exists but is not in the prosecution's custody or control, the People are nonetheless required to "make a diligent, good faith effort to ascertain the existence of [this material]" and make it available to the defense (CP.L. § 245.20[2]). The People are not required, however, to obtain by subpoena duces tecum material or information which the defense may obtain in this manner (C.P.L. § 245.20[2]).
Once the People have fulfilled their discovery obligations, they must file with the court and serve on the defense a certificate of compliance, certifying that they have exercised due diligence and made reasonable inquires and efforts to obtain and disclose material subject to discovery under C.P.L. § 245.20[1] (C.P.L. § 245.50[1]). Absent "an individualized finding of special circumstances," the People "shall not be deemed ready for trial" until they have filed a valid certificate of compliance (C.P.L. § 245.50[3]).
A COC's validity turns on whether the People exercised due diligence to comply with their discovery obligations prior to the COC's filing. While the People bear the burden of establishing that they acted with such diligence, "belated disclosure[s] will not necessarily establish a lack of due diligence or render an initial COC improper" (People v Bay, 41 NY3d 200, 212 [2023]). Analysis of the People's due diligence is "fundamentally case-specific," and "will turn on the circumstances presented" (id.).
C.P.L. Article 245 now includes instruction for courts assessing due diligence in the discovery context. Pursuant to C.P.L. § 245.50[5], courts must analyze the totality of the People's efforts to comply with their obligations under Article 245, rather than assessing the People's efforts "item by item." C.P.L. § 245.50[5][a] enumerates a non-exhaustive list of factors to be considered when determining due diligence, instructing courts to look to:
1. the efforts made by the prosecutor to comply with the requirements of Article 245,
2. the volume of discovery provided and the volume of discovery outstanding,
3. the complexity of the case,
4. whether the prosecutor knew that the belatedly disclosed or allegedly missing material existed,
5. the explanation for any alleged discovery lapse,
6. the prosecutor's response when apprised of any allegedly missing discovery,
7. whether the belated discovery was substantively duplicative, insignificant, or easily remedied,
8. whether the omission was corrected,
9. whether the prosecution self-reported the error and took prompt remedial action [*4]without court intervention, and
10. whether the prosecution's delayed disclosure of discovery was prejudicial to the defense or otherwise impeded the defense's ability to effectively investigate the case or prepare for trial.
Finally, C.P.L. § 245.50[5][b] instructs courts that a due diligence assessment should be based on the combination of factors outlined in C.P.L. § 245.50[a], with no one factor being determinative.
DISCUSSION
I. The Parties' Arguments
A. The Defendant's Argument
The defense argues that the COC is invalid because the prosecution disclosed multiple items after its filing, and because a few discoverable items remain outstanding.
First, the defense argues that the prosecution belatedly disclosed multiple police reports which are automatically discoverable under C.P.L. § 245.20[1][e]. The belatedly disclosed police reports included chain of custody reports, property vouchers, activity logs for three officers, and an ICAD report.
Second, the defense contends that the prosecution has yet to disclose three items: photographs taken by an officer at the scene depicting the complainant's vehicle, license, and rental paperwork, which are automatically discoverable under C.P.L. § 245.20[1][h]; a copy of the warrant check run by the NYPD at the time of arrest (the WINQ), discoverable under C.P.L. § 245.20[1][e]; and the body worn camera ("BWC") audit trails, which the defense maintains are automatically discoverable under C.P.L. § 245.20[1][e]. The defense believes the WINQ to exist because this document was checked off on the arresting officer's Arrest Checklist (Defense Motion at 17). As for the photographs, the defense notes that Officer Urman can be seen in body worn camera footage taking photographs of the complainant's vehicle, while Officer Sanchez can be seen on body worn camera photographing the complainant's ID and rental car paperwork (Defense Motion at 18).
B. The People's Argument
The People argue that they exercised due diligence prior to the COC's filing, first sending a request for discovery to the NYPD on January 13, 2025, the day after Defendant's arraignment (People's Opposition Exhibit A). The prosecution notes that they followed up with the 47th Precinct via e-mail on eight subsequent occasions from February 7, 2025, through March 31, 2025 (People's Opposition Exhibits B through I). The People's follow-up e-mails, beginning with the communication sent on February 25, 2025, requested specific outstanding items (People's Opposition Exhibit C).
At the time of the COC's filing, the People were aware that multiple items had not yet [*5]been disclosed. Follow-up e-mails sent to the Precinct requested specific items, such as the WINQ and the officers' activity logs. Moreover, the People's automatic disclosure form explicitly acknowledged the People's awareness that some discoverable items had not yet been disclosed. The ADF states, "there existed (or exists) material or information that we were (are) required to disclose under C.P.L. § 245.20, but which we are not able to disclose despite the People's diligent good faith efforts because such material or information has been lost or destroyed, (or is now beyond our reach)." (Defense Motion Exhibit A). The ADF lists all of the undisclosed items which form the basis for Defendant's instant motion, as well as the dates on which the People requested the items from the NYPD.
Despite their multiple requests to the Precinct, the People did not receive several discoverable items until April 11, 2025, the day after the COC's filing. These items — the three officers' activity logs, the chain of custody reports, the property vouchers, and the ICAD — were promptly disclosed to the defense on April 14, 2025. When the prosecution received several items of discovery from the NYPD on April 11, 2025, the discovery liaison stated that the WINQ and "any additional photos" were not available.
Finally, with regard to the BWC audit trails, the People contend that this item is not automatically discoverable.
II. The Court's Analysis
A. Due Diligence Under Article 245.50 and People v. Bay
Belated disclosures do not, in and of themselves, signify that a certificate of compliance is invalid. The Court of Appeals has made clear that, with regard to discovery compliance, "there is no rule of strict liability; that is, the statute does not require or anticipate a perfect prosecutor" (People v Bay, 41 NY3d 200, 204 [2023]). At the same time, "good faith. . . is not sufficient standing alone and cannot cure a lack of diligence" (id.).
Here, though the People obtained and shared multiple police reports after the COC's filing, they have nevertheless established that they exercised the requisite due diligence. As to the People's efforts to comply with their obligations under Article 245, the Court notes that the People began to gather discovery promptly, sending the first request to the 47th Precinct on January 13, 2025, the day after Defendant's arraignment. The People attach, for the Court's review, eight follow-up e-mails, sent to the Precinct at regular intervals between February 7, 2025, and March 31, 2025. Some of these follow-up e-mails flag specific items that had not yet been disclosed, indicating some ongoing review of discovery as it was received.
When the COC was filed, the People were aware that the items at issue here existed; their automatic disclosure form lists these items as having not yet been disclosed. One of Article 245's new provisions, which became effective on August 7, 2025, directs that a COC "shall. . .identify the items that the prosecution is required to disclose and of which the prosecution is aware, but has been unable to obtain despite the exercise of due diligence" (C.P.L. § 245.50[1]). While the above statutory language became effective after the COC was filed, the People nonetheless had [*6]an obligation at the time of filing to notify defense counsel of known outstanding material; to fail to do so would be to certify that all known discovery had been turned over when, in fact, it had not (see People v Mesan-Moran, 2025 NY Slip Op 25188, fn4 [Crim Ct, Bronx County] ["Though this particular language is new, it does not substantively alter the People's pre-existing duty to flag items of discovery known to the prosecution but not yet disclosed. To fail to flag such material, when its existence is known to the prosecution, would be to falsely certify under C.P.L. § 245.50[1] that all known material had been disclosed."]). Here, the automatic disclosure form enumerated the items which remained outstanding, as well as the People's attempts to obtain this material prior to the filing of the COC.
As a prosecution for misdemeanor driving while intoxicated, this case is not a particularly complex one; nor does the shared discovery appear to have been voluminous. Nonetheless, the omission of the majority of items at issue here was promptly remedied, as the chain of custody reports, the property vouchers, the three officers' activity logs, and the ICAD were disclosed to the defense on April 14, 2025, just four days after the COC was filed. There is no indication that the belated disclosure of these reports has prejudiced the defense or impeded their ability to investigate or prepare for trial. Finally, the prosecution credibly asserts that the WINQ was not generated, noting that an Entity Report — one of multiple ways an arresting officer might determine whether an arrestee has outstanding warrants — was disclosed as part of Defendant's arrest packet (People's Opposition at 9).
B. The Body Worn Camera Audit Trails
The People contend that the audit trails for the disclosed body worn camera files are not discoverable. The Court disagrees.
Audit trails are "reports of data and notes created by the NYPD" for body worn camera files (People v Ballard, 82 Misc 3d 403, 408 [Crim Ct, Queens County 2025]). Evidence audit trails contain a plethora of information about a body worn camera file, including its start time and upload time, as well as "which users accessed and streamed the video" (id. at 409). Evidence audit trails also contain categories, tags, and notes added by officers, including notes about the level of police intrusion involved in a stop, as well as demographic information about individuals stopped in some encounters (id.; see also People v Holly, 2025 NY Slip Op 50448(U) [Crim Ct, New York County]). Device audit trails record specific information about the camera itself, such as when it was activated, when it was charged, and when it was deactivated (People v Ballard, 82 Misc 3d 403, 409 [Crim Ct, Queens County 2025]). Device audit trails can also convey the reason that a body worn camera became inactive — indicating, for instance, whether a device was deactivated due to a dead battery or human action (People v Holly, 2025 NY Slip Op 50448(U) [Crim Ct, New York County]).
As audit trails contain categories, tags, and notes entered by officers, the Court finds that they are discoverable under C.P.L. § 245.20[1][e]. Because audit trails may also contain information which could be used to impeach a testifying officer, they are also discoverable under C.P.L. § 245.20[1][k]. (See People v Bresnan, 85 Misc 3d 280, *9 [Crim Ct, Monroe County 2024] ["The majority of courts that have addressed this issue agree with Defendant that C.P.L. [*7]§245.20 dictates that BWC audit logs be produced by the People as part of their automatic discovery responsibility."].) Consequently, the prosecution must disclose the audit trails for all body-worn camera footage to the defense within fifteen [15] business days.
C. The Photographs
The prosecution contends that the photographs taken by officers at the scene no longer exist; in an e-mail dated April 11, 2025, the assigned prosecutor was notified by the 47th Precinct discovery liaison that "any additional photographs" were not available (People's Opposition Exhibit J). However, the People's conclusion that these photos do not exist is premature. It is not clear from the discovery liaison's response that she understood that officers at the scene had taken pictures with their department-issued phones. Moreover, the assigned prosecutor did not contact Officer Urman or Officer Sanchez, the officers who took the photos. The Court directs the People to make further inquiry into the existence of the photographs within fifteen [15] business days.
Though the People did not make adequate efforts to obtain the photographs, their efforts must be assessed holistically. As noted above, the People began gathering discovery early and made numerous follow-ups which targeted specific outstanding items. The majority of items in dispute were promptly remedied, with no discernible prejudice to the defense. Consequently, the COC filed on April 10, 2025, was valid.
THE CPL § 30.30 CALCULATION
The criminal action commenced with the filing of the accusatory instrument on January 12, 2025. The first day counted for speedy trial purposes is the next day, January 13, 2025 (People v Morrison, 231 NYS 3d 922 [Crim Ct, Bronx County 2025]). The prosecution filed and served the COC on April 10, 2025. As discussed supra, the COC was valid and tolled the speedy trial clock (January 13, 2025 — April 10, 2025 = 88 days).
Eighty-eight [88] are chargeable to the People.
CONCLUSION
Upon review and consideration of the submissions, court file and relevant legal authority, Defendant's motion to dismiss pursuant to CPL §§ 245.50[4][c], 30.30[1][b], and 170.30[1][e] is DENIED.
Defendant's motion for suppression is GRANTED to the extent that the Court orders pre-trial hearings pursuant to Mapp/Dunaway/Johnson, Smith/Gursey/Atkins, Huntley and Wade.
The prosecution is ORDERED to disclose the audit trails, and to further inquire into the existence of photographs taken at the scene, within fifteen [15] business days.
This constitutes the opinion, decision, and the order of the Court.
Dated: September 8, 2025
Bronx, New York
Hon. Deidra R. Moore, J.C.C.